**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

MONEC HOLDING AG,      §
     §
     Plaintiff/Counterclaim Defendant,      §    Civil Action No.   1:09-CV-312
     §                           (LMB/JFA)
v.     §
     §
APPLE INC.,      §
     §
     Defendant/Counterclaim Plaintiff      §
     §

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION FOR**
**JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT,**
**OR IN THE ALTERNATIVE, TO TRANSFER UNDER 28 U.S.C. § 1404**

# TABLE OF CONTENTS

**Page**

I.    APPLE'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ...................................................... 1

STATEMENT OF UNDISPUTED FACTS ............................................................... 3

    1.    Every Claim of the '678 Patent Requires a "Display Ha[ving] Dimensions Such That One Page of a Book Can Be Displayed at a Normal Size." ........................................................................................ 3

    2.    The Specification Repeatedly Refers to the Electronic Device's "Large" Display ...................................................................................... 3

    3.    During Prosecution, the Applicant Submitted a Brochure for a Device with a Large Display To "Depict . . . the Present Invention." ................................................................................................ 4

    4.    Monec Has Admitted that the iPhone's Display Is Only 2 x 3 Inches ...................................................................................................... 4

    5.    Monec's Infringement Theory Apparently Is Based on a Construction of "Normal Size" that Has No Lower Boundary ............. 5

ARGUMENT ......................................................................................................... 5

    A.    JUDGMENT ON THE PLEADINGS IS WARRANTED BECAUSE THERE ARE NO DISPUTED FACTUAL ISSUES ......................................... 5

    B.    THE "DISPLAY HA[VING] DIMENSIONS SUCH THAT ONE PAGE OF A BOOK CAN BE DISPLAYED AT A NORMAL SIZE" LIMITATION CANNOT BE CONSTRUED TO COVER THE iPHONE ...... 7

    1.    The "Display . . . at a Normal Size" Limitation Cannot Mean a Display as Small as 2 x 3 Inches, or Else the Limitation Is Meaningless .............................................................................. 7

    2.    The Remainder of the Intrinsic Record Confirms that the "Display at a . . . Normal Size" Limitation Cannot Be Construed To Be Limitlessly Small ................................................................. 9

    C.    BECAUSE THE iPHONE DOES NOT SATISFY THE "DISPLAY . . . AT A NORMAL SIZE" LIMITATION, IT CANNOT INFRINGE LITERALLY OR BY EQUIVALENTS ........................................................ 14

    D.    IF THE "DISPLAY . . . AT A NORMAL SIZE" LIMITATION WERE CONSTRUED TO BE AS SMALL AS 2 X 3 INCHES, THEN THE LIMITATION WOULD BE INDEFINITE ....................................................... 16

II.    APPLE'S ALTERNATIVE MOTION TO TRANSFER ........................................... 17

STATEMENT OF FACTS ....................................................................................... 17

    1.    Monec's Complaint Accuses the iPhone of Infringement. .................. 17

# TABLE OF CONTENTS
### (continued)

**Page**

2.   This Case Has Significant Ties to the Northern District of California and Insubstantial Ties to the Eastern District of Virginia...18

3.   Monec Is a Foreign Corporation with No Significant Ties to Virginia ..........................................................................................20

4.   Multiple Potential Third Party Witnesses Have Substantial Ties to California ......................................................................................20

ARGUMENT ....................................................................................................21

A.   SECTION 1404 PERMITS THE COURT TO TRANSFER THIS CASE TO AVOID UNNECESSARY INCONVENIENCE TO WITNESSES AND THE PARTIES ......................................................................22

B.   THIS CASE COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA. ..................................................22

C.   THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA, THE "PREFERRED FORUM" FOR THIS ACTION...............................................................................23

1.   The Convenience of and Access to Witnesses Weighs Heavily in Favor of Transfer to California ...........................................23

2.   The Convenience of the Parties Weighs Heavily in Favor of a Transfer ........................................................................................25

3.   The Plaintiff's Choice of Forum Does Not Weigh Against a Transfer ........................................................................................26

4.   The Interests of Justice Favor Transfer or Are Neutral ......................27

CONCLUSION.................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acterna, L.L.C. v. Adtech, Inc.*,
129 F. Supp. 2d 936 (E.D. Va. 2001) ..........................................................................25, 26, 28

*Agilent Tech., Inc. v. Micromuse, Inc.*,
316 F. Supp. 2d 322 (E.D. Va. 2004) .........................................................................25, 26, 28

*Amgen Inc. v. Chugai Pharm. Co.*,
927 F.2d 1200 (Fed. Cir. 1991)............................................................................................16

*Amhil Enters., Ltd. v. Wawa, Inc.*,
81 F.3d 1554 (Fed. Cir. 1996)................................................................................................6

*Andersen Corp. v. Fiber Composition, LLC*,
474 F.3d 1361 (Fed. Cir. 2007).............................................................................................10

*Ballard Med. Prods. v. Allegiance Healthcare Corp.*,
268 F.3d 1352 (Fed. Cir. 2001)...............................................................................................5

*Bicon Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006)................................................................................................8

*Cat Tech LLC v. Tubemaster, Inc.*,
528 F.3d 871 (Fed. Cir. 2008)................................................................................................8

*Cognitronics Imaging Sys., Inc. v. Recognition Res. Inc.*,
83 F. Supp. 2d. 689 (E.D. Va. 2000) .....................................................................................27

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*
438 F.3d 1374 (Fed. Cir. 2006)..........................................................................................7, 8

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005).......................................................................................16, 17

*Ethicon Endo-Surgery, Inc. v. U. S. Surgical Corp.*,
149 F.3d 1309 (Fed. Cir. 1998)........................................................................................6, 15

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
287 F.3d 1108 (Fed. Cir. 2002)..............................................................................................6

*Felix v. Am. Honda Motor Co.*,
562 F.3d 1167 (Fed. Cir. 2009)..............................................................................................6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd*,
    344 F.3d 1359 (Fed. Cir. 2003) (en banc)..............................................................15

*Freedman Seating Co. v. Am. Seating Co.*,
    420 F.3d 1350 (Fed. Cir. 2005)..............................................................................6, 15

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F.3d 978 (Fed. Cir. 1997)....................................................................................5

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
    71 F. Supp. 2d 517 (E.D. Va. 1999) ..........................................................25, 26, 27

*Henderson v. Wells Fargo Bank*,
    2009 WL 1259355 (W.D.N.C. May 5, 2009) .............................................................6

*Honeywell Int'l Inc. v. ITC*,
    341 F.3d 1332 (Fed. Cir. 2003) .................................................................................16

*In re Genentech, Inc.*,
    2009 U.S. App. LEXIS 10882 (Fed. Cir. May 22, 2009) ....................................24, 26

*In re TS Tech United States Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)................................................................................28

*Ion Beam Applications S.A. v. Titan Corp.*,
    156 F. Supp. 2d 552 (E.D. Va. 2000) ......................................................................26

*JTH Tax.Inc v. Whitaker. et al*,
    No. 2:07-cv-170, 2007 WL 2126300 (E.D. Va. July 16, 2007)..........................23, 26

*Johnson & Johnston Assocs. v. R.E. Serv. Co.*,
    285 F.3d 1046 (Fed. Cir. 2002)..................................................................................8

*Koh v. Microtek Int'l, Inc.*,
    250 F. Supp. 2d 627 (E.D. Va. 2003) ......................................................................22

*LG Elecs., Inc. v. Asustek Computers*,
    126 F. Supp. 2d 414 (E.D. Va. 2000) ......................................................................25

*Markman v. Westview Instr., Inc.*,
    517 U.S. 370 (1996)....................................................................................................5

*Moore U.S.A., Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000)................................................................................15

*Morton Int'l, Inc. v. Cardinal Chem. Co.*,
    5 F.3d 1464 (Fed. Cir. 1993)....................................................................................16

*Neil Bros. Ltd. V. World Wide Lines, Inc.*,
   425 F. Supp. 2d 325 (E.D.N.Y. 2006) ...............................................................25

*Norwood v. Kirkpatrick*,
   349 U.S. 29 (1955).............................................................................................22

*Novo Indus., L.P. v. Micro Molds Corp.*,
   350 F.3d 1348 (Fed. Cir. 2003).........................................................................16

*Original Creatine Patent Co. v. Met-Rx USA, Inc.*,
   387 F. Supp. 2d 564 (E.D. Va. 2005) .....................................................26, 27, 28

*Pannu v. Iolab Corp.*,
   155 F.3d 1344 (Fed. Cir. 1998)..........................................................................12

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .................................................. passim

*Sears Petroleum & Transp. Corp. v. Archer Daniels Midland Co.*,
   558 F. Supp. 2d 273 (N.D.N.Y. 2008) ...............................................................15

*Sjolund v. Musland*,
   847 F.2d 1573 (Fed. Cir. 1988)..........................................................................16

*Smeltzer v. Southern Resorts, Inc.*,
   No. 87-145, 1987 U.S. Dist. LEXIS 9999 (E.D. Va. Oct. 5, 1987).......................24

*Stumbo v. Eastman Outdoors, Inc.*,
   508 F.3d 1358 (Fed. Cir. 2007)..........................................................................15

*Telepharmacy Solutions Inc. v. Pickpoint Corp.*,
   238 F. Supp. 2d 741 (E.D. Va. 2003) ...........................................................25, 28

*V-Formation, Inc. v. Benetton Group SpA*,
   401 F.3d 1307 (Fed. Cir. 2005)..........................................................................11

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)...........................................................................................22

*Verosol B.V. v. Hunter Douglas, Inc.*,
   806 F. Supp. 582 (E.D. Va. 1992) .................................................................23, 26

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997).............................................................................................15

**STATUTES**

28 U.S.C. § 1400(b) ...........................................................................................................................23

28 U.S.C. § 1404 ..........................................................................................................................1, 22

28 U.S.C. § 1404(a) ...........................................................................................................17, 22, 28

35 U.S.C. § 112 .............................................................................................................................3, 9, 16

**REGULATIONS**

Fed. R. Civ. P. 12 .................................................................................................................................6

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| MONEC HOLDING AG, | § | |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | Civil Action No.   1:09-CV-312 |
| | § | (LMB/JFA) |
| v. | § | |
| | § | |
| APPLE INC., | § | |
| | § | |
| Defendant/Counterclaim Plaintiff | § | |
| | § | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION FOR
JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, TO TRANSFER UNDER 28 U.S.C. § 1404**

Because the pleadings present a dispositive issue which can and should be resolved at the outset of this case, Apple Inc. ("Apple") moves this Court for judgment on the pleadings, or in the alternative, for summary judgment. The Apple iPhone, the accused product, does not have a ". . . display [with] dimensions such that one page of a book can be displayed at a normal size."

If this case cannot be concluded on Apple's motion for judgment on the pleadings or for summary judgment, and instead requires full discovery and trial, Apple respectfully asks that the case be transferred to the Northern District of California for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404.

## I.    APPLE'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Monec Holding AG ("Monec"), has accused Apple's iPhone of infringing U.S. Patent No. 6,335,678 ("the '678 patent"). The '678 patent pertains to an electronic book reading device. The iPhone does not infringe the '678 patent, because every claim requires a "display

[with] *dimensions such that one page of a book can be displayed at a normal size*." The

iPhone's 2 x 3 inch display cannot meet this limitation, as the following image demonstrates:



[iPhone's 2" x 3" display compared to Charlotte Brontë's *Jane Eyre* (paperback, 4.2" x 6.8")
and F. Scott Fitzgerald's *The Great Gatsby* (hardcover, 6.5" x 9.5")]

The dimensions of the iPhone's display are much smaller than one page of a conventional

hardcover or paperback book. As a result, the iPhone cannot literally infringe. Nothing in the

patent's specification (which repeatedly refers to "conventional" books), the prosecution history,

or the cited prior art supports extending this limitation to cover a display as small as 2 x 3 inches.

Stretching the "display . . . at a normal size" limitation to cover a small display would read the

limitation out of the claim, rendering it meaningless and indefinite. The iPhone also cannot

infringe under the doctrine of equivalents, as an infringement finding would vitiate the "display .

. . at a normal size" limitation. Apple thus requests judgment on the pleadings or summary

judgment in its favor.

## STATEMENT OF UNDISPUTED FACTS

The uncontested or admitted allegations as revealed in the Complaint, Answer, and Answer to Counterclaims show that there is no genuine factual dispute.  This action thus can be resolved at this juncture.  There can be no dispute over the following facts:

**1.      Every Claim of the '678 Patent Requires a "Display Ha[ving] Dimensions Such That One Page of a Book Can Be Displayed at a Normal Size."**

The '678 patent is entitled, "Electronic Device, Preferably an Electronic Book."[1]  Claim 1, the only independent claim, requires that the "electronic device" have a "display [with] dimensions such that *one page of a book can be displayed at a normal size.*"[2]  Because claims 2 through 13 depend upon claim 1, they incorporate all of its limitations.[3]

**2.      The Specification Repeatedly Refers to the Electronic Device's "Large" Display.**

The '678 patent makes clear that the electronic reading device has a large display.  The specification twice states that the electronic device has a "relatively large display."[4]  It also characterizes the device as having "a large display surface."[5]  In discussing the books and other

---

[1] '678 patent at Title (Ex. A); *see* Complaint at ¶ 6 (Ex. B) (referring to Title); Apple's Answer at ¶ 6 (Ex. C) (same).  The '678 patent was attached to the Complaint.

[2] '678 patent at col. 6, lines 43-44 (Ex. A); *see also* Apple's Counterclaims at ¶ 13 (quoting claim language) (Ex. C); Monec's Counterclaims Answer at ¶ 13 (Ex. D) (admitting claim language).

[3] *See* 35 U.S.C. § 112, ¶ 4; *see also* Apple's Counterclaims at ¶ 12 (stating allegation) (Ex. C); Monec's Counterclaims Answer at ¶ 12 (admitting allegation) (Ex. D).

[4] '678 patent at Abstract; col. 1, line 46 (Ex. A); *see also* Apple's Counterclaims at ¶ 16 (quoting specification) (Ex. C); Monec's Counterclaims Answer at ¶ 16 (denying allegation, but referring to the '678 patent for "full and complete content") (Ex. D).

[5] '678 patent at col. 5, line 59 (Ex. A); *see also* Apple's Counterclaims at ¶ 17 (quoting specification) (Ex. C); Monec's Counterclaims Answer at ¶ 17 (denying allegation, but referring to '678 patent for "full and complete content") (Ex. D).

print media that the invention was designed to display, the specification refers repeatedly to "conventional" books and media.[6]

### 3. During Prosecution, the Applicant Submitted a Brochure for a Device with a Large Display To "Depict . . . the Present Invention."

The applicant's statements during prosecution also demonstrate that the '678 patent is limited to devices with large displays.[7]  In response to an Office Action rejecting all pending claims, the applicant submitted a brochure of the "Monec Voyager" electronic device to the Patent Office "[i]n order to aid in the Examiner's better understanding of the present invention." The applicant explained that the Voyager "depict[ed] the technical features and advantages of the present invention."[8]  Monec has admitted that, measured diagonally, the Voyager's display was 10.4 inches.[9]  This corresponds to dimensions of approximately 6.3 x 8.3 inches, or a surface area of approximately 52.3 square inches.

### 4. Monec Has Admitted that the iPhone's Display Is Only 2 x 3 Inches.

Monec alleged in its Complaint that the iPhone's display measures only 3.5 inches diagonally.[10]  In addition, Monec has admitted that the iPhone's display measures only 2 x 3 inches, with a surface area of approximately 6 square inches.[11]

---

[6] '678 patent at col. 1, line 31 ("conventional book"); col. 2, line 48 ("conventional reading medium"); col. 2, line 64 ("conventional print media") (Ex. A).

[7] The prosecution history was attached to Apple's Counterclaims.

[8] Amendment, dated February 26, 2001 at 5 (Ex. G); *see also* Apple's Counterclaims at ¶ 30 (discussing brochure) (Ex. C); Monec's Counterclaims Answer at ¶ 30 (admitting allegation) (Ex. D).

[9] Monec's Counterclaims Answer at ¶ 32 (Ex. D); *see also* Voyager brochure (Ex. H).

[10] Complaint at ¶ 11 (Ex. B).

[11] Monec's Counterclaims Answer at ¶ 41 (Ex. D).

5.      **Monec's Infringement Theory Apparently Is Based on a Construction of "Normal Size" that Has No Lower Boundary.**

Based on Apple's correspondence with Monec's counsel, Monec's theory of infringement apparently is that the iPhone satisfies the "normal size" limitation if its display is large enough to display a hypothetical book of miniature size.  Monec apparently does not contend (nor could it) that the iPhone's display has dimensions that are the size of a "conventional" book.

## ARGUMENT

A.      **JUDGMENT ON THE PLEADINGS IS WARRANTED BECAUSE THERE ARE NO DISPUTED FACTUAL ISSUES.**

This motion rests on the admitted fact that the iPhone's display is 2 x 3 inches.  The construction of the "display . . . at a normal size" limitation is a legal question for the Court.[12] The Court may decide the dispositive claim construction issue and grant summary judgment in Apple's favor.[13]  Neither lengthy discovery nor a burdensome trial is necessary to adjudicate this issue.  As there is no legitimate factual dispute and the legal construction of the claims is dispositive, the Court "may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties."[14]

Because the iPhone lacks a "display [with] dimensions such that *one page of a book can be displayed at a normal size*," Apple does not infringe as a matter of law.  Any claim construction that Monec might advance to attempt to cover the iPhone would render this

---

[12] *See Markman v. Westview Instr., Inc.*, 517 U.S. 370, 391 (1996).

[13] *See Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997) ("Where the parties do not dispute any relevant facts regarding the accused product . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment.").

[14] *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001).

limitation both meaningless and indefinite.[15]  Under such a construction, a person of skill in the

art could not know how small a display would have to be to avoid the claims.  The iPhone also

cannot infringe under the doctrine of equivalents, because an infringement finding would vitiate

the "display . . . at a normal size" limitation.[16]

Accordingly, judgment is appropriate now to spare the parties and the Court the burden

and expense of this litigation.[17]  The Court can grant judgment on the pleadings solely based on

the pleadings and admissions contained in them, the documents incorporated therein, and any

judicially noticed facts – all of which reveal that there are no disputed issues of material fact.[18]

Should the Court wish to consider issues outside the pleadings, it also may grant summary

judgment in Apple's favor.[19]  Courts routinely grant (and the Federal Circuit routinely affirms)

summary judgment in cases where there is no genuine dispute of material fact that the defendant

does not infringe.[20]

---

[15] *See* Sections B(1) & D, *infra*.

[16] *See Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358-59 (Fed. Cir. 2005) (no finding of infringement under doctrine of equivalents, if it "would entirely vitiate a particular claim[ed] element"); *Ethicon Endo-Surgery, Inc. v. U. S. Surgical Corp*., 149 F.3d 1309, 1316-17 (Fed. Cir. 1998).

[17] *See* Fed. R. Civ. P. 12(c) (authorizing motion for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial . . . .").

[18] *See Henderson v. Wells Fargo Bank*, No. 3:09-cv-01, 2009 WL 1259355, at *2 (W.D.N.C. May 5, 2009) ("In resolving a motion for judgment on the pleadings, the court may rely on admitted facts in the pleadings, documents attached to the pleadings, and facts contained in materials of which the court may take judicial notice.").

[19] *See* Fed. R. Civ. P. 12(d)  ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion [shall] be treated as one for summary judgment under Rule 56.").

[20] *See, e.g.*, *Felix v. Am. Honda Motor Co.*, 562 F.3d 1167, 1180-81 (Fed. Cir. 2009) (affirming summary judgment of non-infringement based on construction of "mounted" limitation); *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1116-17 (Fed. Cir. 2002) (affirming this Court's grant of summary judgment of non-infringement based on construction of "bonus" limitation); *Amhil Enters., Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1557-58 (Fed. Cir. 1996) (affirming summary judgment where "no genuine issue of material fact exist[ed] and no expert testimony [was] required to explain the nature of the patented invention or the accused product or to assist in their comparison").

**B.    THE "DISPLAY HA[VING] DIMENSIONS SUCH THAT ONE PAGE OF A BOOK CAN BE DISPLAYED AT A NORMAL SIZE" LIMITATION CANNOT BE CONSTRUED TO COVER THE iPHONE.**

The first step in a claim construction analysis is to consider the language of the claims.[21] The words of the claims should be given their ordinary and customary meaning to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application.[22]

Here the customary meaning of the "normal size" limitation cannot be as small as a miniature book.  This limitation, when properly construed in the context of the specification and the skill of the art, requires a display that has the size of a "conventional" hardback or paperback book.

**1.    The "Display . . . at a Normal Size" Limitation Cannot Mean a Display as Small as 2 x 3 Inches, or Else the Limitation Is Meaningless.**

Claim 1 requires a "display [with] *dimensions such that one page of a book can be displayed at a normal size*."  This is a limitation about dimensions, and those dimensions must have measurable limits to be meaningful.  If, as Monec apparently contends, the limitation should be construed so broadly as to encompass a book of any size, the "normal size" display dimension limitation would be read out of the claims and be meaningless.

In *Curtiss-Wright Flow Control Corp. v. Velan, Inc.,* the Federal Circuit addressed a similar issue involving the term "adjustable."[23]  The district court had interpreted that term as

---

[21] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*).

[22] *See id.*

[23] 438 F.3d 1374, 1378 (Fed. Cir. 2006).

"not limited by [the] time, place, manner, or means of adjustment."[24]  The Federal Circuit

rejected this broad interpretation, explaining:

> [T]he district court's construction of "adjustable" renders that
> limitation nearly meaningless. . . .  Almost any mechanical device
> undergoes change . . . when no consideration is given to the "time,
> place, manner, or means of adjustment."[25]

Here, as in *Curtiss-Wright*, the "display . . . at normal size" limitation cannot be construed to

encompass displays of limitlessly small (and thus meaningless) dimensions.

Likewise, in *Bicon Inc. v. Straumann Co.*, the Federal Circuit analyzed a claim reciting

an "abutment" and a corresponding "height" limitation.[26]  The patentee argued that the claims

read on "any hypothetical abutment," but the Federal Circuit disagreed, explaining:[27]

> The purpose of a patent claim is to define the precise scope of a
> claimed invention, thereby "giving notice both to the examiner at
> the U.S. Patent and Trademark Office during prosecution, and to
> the public at large, including potential competitors, after the patent
> has issued."[28]

Under the patentee's reading of the "abutment" limitation, the height limitation would be a

"meaningless" limitation that "would never exclude any device."  This "would read the height

limitation out of the claim altogether."[29]

Here, the "display . . . at a normal size" limitation also cannot be construed in a manner

that would cover a display that is the size of "any hypothetical" book.  Such a construction would

never exclude any device and would render the claim limitation meaningless.  This would

---

[24] *Id.* at 1378.

[25] *Id*. at 1378-79.

[26] 441 F.3d 945, 951 (Fed. Cir. 2006).

[27] *Id.* at 951.

[28] *Id.* at 950 (citing *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002)).

[29] *Id.* at 951; *see also Cat Tech LLC v. Tubemaster, Inc.,* 528 F.3d 871, 885 (Fed. Cir. 2008) (claim
limitation should not be construed to render it "functionally meaningless.").

provide inadequate notice to the public of the precise scope of the "display . . . at a normal size"

limitation, and thus cannot be correct.

> **2.    The Remainder of the Intrinsic Record Confirms that the "Display at a . . . Normal Size" Limitation Cannot Be Construed To Be Limitlessly Small.**

Claim construction also requires an assessment of the "intrinsic record" for the patent-in-

suit, including the specification and prosecution history.[30]  Here, that evidence further confirms

that the "display . . . at a normal size" limitation cannot be limitlessly small, but must be defined

by reference to the size of a "conventional" book.

> **a.    The specification confirms that the "normal size" limitation refers to "relatively large" displays – consistent with the size of a "conventional" book.**

The specification ordinarily is the "primary basis for construing the claims,"[31] as the

inventor must provide a "full, clear, concise, and exact" description of the invention in the

specification.[32]  While the claims require that the "display has *dimensions* such that *one page of*

*a book can be displayed at a normal size,*" the specification does not expressly define what these

"dimensions" are or what the "normal size" of one page of a book is.  The specification makes

clear, however, that the invention set forth in the claims requires a "relatively large" display with

a "large display surface."   It also makes clear that the purpose of the invention is to read

"conventional books" and reading material.

In the Abstract, the applicant explained that "[t]he electronic device *according to the*

*invention* . . . has a relatively large display."[33]  The applicant repeated this statement later in the

---

[30] *See Phillips*, 415 F.3d at 1312-13.

[31] *Id.* at 1315.

[32] 35 U.S.C. § 112, ¶ 1.

[33] '678 patent (emphasis added) (Ex. A).

Summary of the Invention.  There, he characterized the electronic device that is the "*object of the invention*" as having a "relatively large" display.[34]  Later in the specification, the applicant also described the device "*according to the invention*" as having a "large display surface."[35]

The specification additionally makes clear that this "large display" is for reading "conventional" reading materials.  Indeed, at three separate places in the specification, the applicant refers to "conventional books," "conventional reading medium," and "conventional print media."[36]  There is no discussion of *unconventional* books or print media, and no mention of miniature books.

Based on these descriptions, one of ordinary skill in the art reading the '678 patent would understand that the *invention* set forth in the claims requires a large display suitable for displaying one page of a conventional book at normal size.  The specification's repeated descriptions of the display as "relatively large" and as having a "large display surface" make clear that these descriptions apply not just to a single embodiment, but to the invention as a whole.  This is particularly true where, as here, these descriptions appear in both the Abstract and the Summary of the Invention.[37]

> **b.    The prosecution history demonstrates that the applicant represented, and the Examiner understood, that the claimed display has dimensions much larger than the iPhone's.**

In construing the claims, a court should review the prosecution history, which is the "complete record of the proceedings before the PTO."[38]  The prior art references cited during

---

[34] *Id.* at Abstract, col. 1, line 46 (emphasis added).

[35] *Id.* at col. 5, lines 13-14 (". . . electronic device 8 according to the invention . . ."), col. 5, lines 58-59 ("device 8 . . . nevertheless provides a large display surface") (emphasis added).

[36] *Id.* at col. 1, line 31, col. 2, line 48, col. 2, line 64.

[37] *See Andersen Corp. v. Fiber Composition, LLC*, 474 F.3d 1361, 1367 (Fed. Cir. 2007) (affirming construction where statements in Abstract and Summary of the Invention were "not descriptions of particular embodiments, but are characterizations directed to the invention as a whole.").

prosecution have "particular value as a guide to the proper construction of the term" because they may indicate the meaning the patentee intended to adopt.[39]  There is nothing in the prosecution history that conflicts with an interpretation that excludes small sized displays and in fact, all of the art cited was to larger display sizes, showing what was "normal."

The applicant's statements during prosecution demonstrate the applicant's own understanding that the display dimension limitation covers large displays, not small ones.  In responding to the Examiner's first Office Action, the applicant submitted a brochure for the "Monec Voyager" electronic device.  The applicant represented that this product "depict[ed]" the "technical features and advantages" of the "invention," stating:

> [I]n order to aid in the Examiner's better understanding of the present invention, enclosed herewith are brochures of the "Voyager" electronic device which *depicts the technical features and advantages of the present invention*.[40]

The submitted Voyager brochure, in turn, stated that the product had a 10.4 inch display measured diagonally (as displays are typically measured).[41]  Monec has admitted this in its Answer to Apple's Counterclaims.[42]

Critically, all of the pending claims at the time of the applicant's responses included the "normal size" display dimension limitation.[43]  As a result, the applicant's statement that the Voyager product "depict[ed] the technical features and advantages of the present invention" demonstrates his understanding that a display dimension limitation applies only to displays much

---

[38] *Phillips*, 415 F.3d at 1317.

[39] *See V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005).

[40] Amendment, dated February 26, 2001 at 5 (emphasis added) (Ex. G).

[41] Voyager brochure (Ex. H).  This corresponds to dimensions of 6.3 x 8.3 inches.

[42] *See* Monec's Counterclaims Answer at ¶ 32 (Ex. D).

[43] Application, dated October 22, 1999 at 10 (Ex. E).

larger than 2 x 3 inches.[44]  In fact, the display of the Voyager product covered a surface area

***more than eight times larger*** than the iPhone's 2 x 3 inch display,[45] as the following illustrates:



[Comparison of iPhone 2 x 3 inch display (3.5 inch diagonal) to
paper with dimensions of 6.3 x 8.3 inches (10.4 inch diagonal)]

The Examiner's rejections during prosecution further confirm the Patent Office's

understanding that the "display . . . at a normal size" limitation is not an amorphous limitation.

These rejections demonstrate that both the Examiner and the applicant understood that the claims

do not cover displays as small as 2 x 3 inches.

**Indefiniteness rejection.**  The original claims required a "display [with] dimensions such

that . . . *approximately* one page of a book can be displayed at normal size."[46]  In the first Office

---

[44] *See, e.g., Pannu v. Iolab Corp.*, 155 F.3d 1344, 1352 (Fed. Cir. 1998) (affirming construction covering examples provided by patentee during prosecution).

[45] The surface area of the iPhone's display is 6.0 square inches, as compared to 52.3 square inches for the Voyager's display.

[46] Application, dated October 22, 1999, at 10-12 (Ex. E).

Action, the Examiner rejected these claims as indefinite.[47]   In response, the applicant canceled these claims and submitted new claims.

The new claims deleted the word "approximately," but retained the requirement that the "display ha[ve] dimensions such that one page of a book can be displayed at a normal size."[48] The Examiner's rejection – and the applicant's response – make clear their understanding that the "display . . . at a normal size" limitation is not arbitrary, but instead fixes the dimensions of the claimed display at the size of a normal book.

**Anticipation by Gaston.**   In the first Office Action, the Examiner also rejected all of the pending claims as anticipated by U.S. Patent No. 5,956,048 to Gaston ("Gaston patent").[49]   At the time of this rejection, all pending claims included the "normal size" display dimension limitation.[50]   The Examiner's citation of the Gaston patent, which disclosed a 6.5 x 6.5 inch display, demonstrates his understanding that the display dimension limitation covers displays with dimension far larger than 2 x 3 inches.   In fact, a 6.5 x 6.5 inch display covers a surface area *more than seven times larger* than the iPhone's display.   Significantly, the applicant distinguished the Gaston patent *not* on the basis of its screen size, but because of the manner in which it downloaded information from external sources.[51]

**Anticipation by Ditzik.**   In the final Office Action, the Examiner also rejected all of the pending claims as anticipated by U.S. Patent No. 5,983,073 to Ditzik ("Ditzik patent").[52]   The

---

[47] Office Action, dated October 25, 2000 at ¶ 2 (Ex. F).

[48] Amendment, dated February 26, 2001 at 1, 4 (Ex. G).  New claims 14-26 ultimately issued as claims 1-13.

[49] Office Action, dated October 25, 2000 at ¶ 5 (Ex. F).  The Gaston patent is attached as Ex. K.

[50] Application, dated October 22, 1999 at 10 (Ex. E).

[51] Amendment, dated Feb. 26, 2001, at 6 (Ex. G).

[52] The Ditzik patent is attached as Ex. L.

Examiner specifically found that the Ditzik patent disclosed a "display having dimensions such that one page of a book can be displayed at a normal size."[53]  The displays in the Ditzik patent were "10 to 14 inches or more" measured diagonally, or no smaller than 6 x 8 inches.[54]

The applicant distinguished the Ditzik patent *not* on the basis of its screen size, but by amending the "housing" limitation to clarify that it has a "unitary" flat and frame shape.[55] Monec has admitted that the 6 x 8 inch display in Ditzik covers a surface area "of approximately 48 square inches" – or ***eight times larger*** than the iPhone's 2 x 3 inch display, which covers a surface area of only 6 square inches.[56]

The Examiner's rejections based on Gaston and Ditzik confirm his understanding that a "display ha[ving] dimensions such that one page of a book can be displayed at a normal size" covers only a large display.[57]  At no time during prosecution did the applicant or the Examiner ever refer to displays as small as 2 x 3 inches.

## C.   BECAUSE THE iPHONE DOES NOT SATISFY THE "DISPLAY . . . AT A NORMAL SIZE" LIMITATION, IT CANNOT INFRINGE LITERALLY OR BY EQUIVALENTS.

For all of the reasons noted above, the display dimension limitation cannot be construed to cover a display as small as the iPhone's without rendering that limitation meaningless or ignoring the specification and prosecution history.  The iPhone's 2 x 3 inch display is ***not*** "***large.***"[58]  It also is ***more than seven times smaller*** by surface area than the displays that the

---

[53] Office Action, dated May 23, 2001, at 2 (Ex. I).

[54] U.S. Patent No. 5,983,073 to Ditzik at col. 4, lines 17-32 (Ex. L).

[55] Amendment, dated August 23, 2001 (Ex. J).  The Examiner then allowed the claims.

[56] Monec's Counterclaims Answer at ¶ 37 (Ex. D).

[57] *See Phillips*, 415 F.3d at 1317 ("Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent.").

[58] '678 patent, col. 1, line 46 ("relatively large"); col. 5, line 59 ("large display surface") (Ex. A).

applicant and the Examiner identified during prosecution.[59]  Because the iPhone's display lacks "dimensions such that one page of a book can be displayed at a normal size," it does not literally infringe.[60]

Infringement by equivalents also is not possible.  The doctrine of equivalents applies only where the differences between the claimed and accused devices are "insubstantial."[61]  But the iPhone's 2 x 3 inch display is *substantially* smaller than one page of a typical hardcover or paperback book.  Moreover, the doctrine of equivalents cannot apply where its application would "vitiate" a limitation by rendering it meaningless.[62]  But that is exactly what would happen if the "display . . . at a normal size" limitation were permitted to encompass displays with dimensions "such that one page of a book can be displayed only at *less than a normal* size."[63]

Additionally, the doctrine of equivalents presumptively cannot apply where a patentee has narrowed a limitation for a reason relating to patentability.[64]  As noted above, in response to the Examiner's indefiniteness rejection, the applicant narrowed the display dimension limitation

---

[59] *Compare* iPhone's 2 x 3 inch display *with* Gaston patent at col. 2, lines 63-64 (6.5 x 6.5 inch display covers surface area that is seven times larger), Ditzik patent at col. 4, lines 17-32 (minimum 6 x 8 inch display is eight times larger), Voyager brochure (6.3 x 8.4 inch display covers surface area that is more than eight times larger) (Exs. K, L, and H respectively).

[60] *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) (product that fails to practice or incorporate even a single limitation does not literally infringe).

[61] *Id.* at 36; *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007).

[62] *See Freedman Seating*, 420 F.3d at 1358-59 (doctrine of equivalents inapplicable where application would vitiate claim limitation); *accord Ethicon*, 149 F.3d at 1316-17 (Fed. Cir. 1998); *Stumbo*, 508 F.3d at 1361.

[63] *See Moore U.S.A., Inc. v. Standard Register Co.,* 229 F.3d 1091, 1106 (Fed. Cir. 2000) (refusing to apply doctrine of equivalents to allow "majority" to cover "minority," as application would vitiate limitation).

[64] *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd*, 344 F.3d 1359, 1364 (Fed. Cir. 2003) (en banc); *Sears Petroleum & Transp. Corp. v. Archer Daniels Midland Co.*, 558 F. Supp. 2d 273, 281, 282 (N.D.N.Y. 2008) (where applicant narrowed claims to overcome "the patent examiner's determination that the . . . claims . . . were vague and indefinite," prosecution history estoppel barred them from "relying on the doctrine of equivalents to recapture" the surrendered subject matter).

by deleting the modifier "approximately" from that limitation.  Specifically, the applicant changed the phrase "approximately one page" to "one page."[65]  Because this was a reason relating to patentability, Monec cannot contend now that the iPhone's display, which is *smaller* than " . . . one page of a book at a normal size," is equivalent to the display of " . . . one page of a book at a normal size."

> **D.      IF THE "DISPLAY . . . AT A NORMAL SIZE" LIMITATION WERE CONSTRUED TO BE AS SMALL AS 2 X 3 INCHES, THEN THE LIMITATION WOULD BE INDEFINITE.**

A construction that would cover a book of any size also cannot be correct because it would render the claims indefinite under 35 U.S.C. § 112, ¶ 2.  The definiteness requirement ensures that a patentee provides clear warning as to what constitutes infringement and a clear measure of the invention to facilitate the patentability determination.[66]  A court may hold a claim to be invalid as indefinite when "those skilled in the art would [not] understand what is claimed when the claim is read in light of the specification."[67]  A question of law, indefiniteness is an appropriate subject for judgment on the pleadings.[68]

Nothing in the intrinsic record supports a construction of the display dimension limitation that encompasses a display as small as 2 x 3 inches.  If construed to cover such a small display, the limitation would be indefinite.  This is because there would be no rational basis for

---

[65] Amendment, dated February 26, 2001 at 1, 4 (Ex. G).

[66] *See Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988); *accord Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1347 (Fed. Cir. 2005) ("[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude.").

[67] *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993); *see also Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1358 (Fed. Cir. 2003); *Amgen Inc. v. Chugai Pharm. Co.,* 927 F.2d 1200, 1218 (Fed. Cir. 1991) (holding claims to a purified protein of "at least about . . . [a] specific activity level" to be indefinite, where nothing in the intrinsic or extrinsic evidence clarified the meaning of "about").

[68] *See Honeywell Int'l, Inc. v. Int'l Trade Comm.*, 341 F.3d 1332, 1338 (Fed. Cir. 2003).

determining the lower boundaries of the limitation.  The determination of what constitutes "dimensions such that one page of a book can be displayed at a normal size" would be entirely (and impermissibly) subjective.[69]  Such a conclusion would render the claims fatally deficient.[70]

## II.   APPLE'S ALTERNATIVE MOTION TO TRANSFER

In the event that the Court does not grant Apple's motion for judgment on the pleadings, the case will have to be extensively litigated and set for trial.  At that point, the convenience of the parties and witnesses will become highly relevant.

Monec is a Swiss corporation with no ties to this district or the Commonwealth of Virginia.  Apple's headquarters and primary facilities are located in the Northern California. Nearly all of the Apple documents expected to be the subject of discovery and Apple personnel knowledgeable about the design, development, features, pricing, and revenues of the accused product reside in Northern California.  Accordingly, in the alternative, Apple moves this Court pursuant to 28 U.S.C. § 1404(a) to transfer this case to the U.S. District Court for the Northern District of California.

## **STATEMENT OF FACTS**

### 1.   **Monec's Complaint Accuses the iPhone of Infringement.**

Monec filed this Complaint against Apple for alleged infringement of U.S. Patent No. 6,335,678 ("the '678 patent") to Theodor Heutschi.[71]  The '678 patent relates generally to an electronic device for reading books.  Monec alleges that it is the sole assignee of the '678 patent.[72]

---

[69] *See Datamize, LLC,* 417 F.3d at 1352-53 (holding claim using the phrase "aesthetically pleasing" to be indefinite as depending on an "undefined standard").

[70] *See id.*

[71] Complaint at ¶ 6 (Ex. B).

[72] *Id.*

In the Complaint, Monec specifically accuses Apple's iPhone of infringement, alleging

that:

> Upon information and belief, Apple has been, still is, and will
> continue infringing, contributing to the infringement of, and/or
> inducing the infringement of the '678 Patent in violation of 35
> U.S.C. § 271 by making, selling, using and/or offering for sale one
> or more of its products and services, including, but not limited to,
> its Apple iPhone, alone and in combination with other Apple
> products and services, within this jurisdiction and elsewhere
> without license of the '678 Patent.[73]

The Complaint also refers to iPhone applications available for download from Apple's

"AppStore." [74]

### 2. This Case Has Significant Ties to the Northern District of California and Insubstantial Ties to the Eastern District of Virginia.

Apple is incorporated under the laws of California and has its worldwide headquarters in

Cupertino, California.[75]  Approximately 7,800 full-time employees work at Apple's Cupertino

headquarters.[76]

Research, design, and development efforts related to the accused iPhone product and the

App Store, which provides a platform from which users may download certain iPhone

applications, are centered in and directed from Apple's Cupertino headquarters in the Northern

California.  Decisions regarding marketing and pricing of Apple's iPhone and App Store

products also occur in Cupertino.[77]

---

[73] *Id.* at ¶ 25 (emphasis added).

[74] *Id.* at ¶¶ 19-22.

[75] *Id.* at ¶ 2; Apple's Answer at ¶ 2 (Ex. C).

[76] Reicher Decl. ¶ 5 (Ex. M).

[77] *Id.* at ¶¶ 2-6.

Every foreseeable Apple witness regarding the accused iPhone product works out of Cupertino.  As set forth in Apple's Rule 26(a)(1) Initial Disclosures and based on the information Apple has gathered to date, the following Apple employees may have knowledge regarding the development of the Accused iPhone and related applications:

- Steve Zadesky, Director of iPod Product Design

- Richard Howarth, Director of Industrial Design

- Shawn Gettemy, Manager of iPod & iPhone Displays

- Cindy Lawrence, Senior Manager of Worldwide Developer Relations

- Mary Beth James, Manager of Worldwide Developer Relations

- Christopher Stringer, Senior Director of Industrial Design

- Charles Lancaster, Senior Director of Worldwide Financial Planning and Analysis

- Robert Borchers, Senior Director of Product Marketing

- Michael Culbert, Senior Director of Platform Architecture

All of these employees are in Northern California.[78]  None is in Virginia.

Further, the documents that Apple expects to be subject of discovery are located primarily in the Northern California, not Virginia.  In particular, technical and financial information relating to the iPhone or electronic book applications for the iPhone are located primarily in California.[79]

Apple has 210 retail stores throughout the United States. Only six of these – or less than 3% – are located in Virginia.[80]  The Apple retail stores in Virginia are engaged only in sales,

---

[78] While Cindy Lawrence resides in Seattle, she travels to Apple's headquarters regularly and maintains an office there.  *Id.* at ¶ 7.

[79] *Id.* at ¶ 6.

[80] *Id*. at ¶ 8.

service, or marketing activities.[81]   None of the employees at these stores is a relevant witness regarding the products at issue in this litigation.

### 3.      Monec Is a Foreign Corporation with No Significant Ties to Virginia.

Monec also does not appear to have any significant ties to the Eastern District of Virginia.  In its Complaint, Monec claims to be incorporated and headquartered in Berne, Switzerland.[82]  Monec's business apparently involves "managing and utilizing patents in [the] area [of mobile electronic communication systems] and awarding licenses."[83]  It is unlikely that Monec conducts any regular business in the Eastern District of Virginia, as it admits that it does not currently sell any products or services.[84]

There is no evidence that any of Monec current or former employees has any connection to this district.  The sole named inventor of the asserted patent, Theodor Heutschi, resides in Switzerland.[85]

### 4.      Multiple Potential Third Party Witnesses Have Substantial Ties to California.

Multiple potential third party witnesses reside in California.  For example, Monec has identified Amazon's "Kindle" product and Sony's "Reader Digital Book" product as potentially relevant to this case.[86]  The Kindle was developed by Lab126, an Amazon subsidiary located ***less than one mile*** from Apple's Northern California headquarters.[87]  Sony's Digital Reading

---

[81] *Id.*

[82] Complaint at ¶ 1 (Ex. B).

[83] *Id.*

[84] Monec's Counterclaims Answer at ¶ 2 (Ex. D).

[85] '678 patent (cover sheet) (Ex. A); Monec's Initial Disclosures (Ex. N).

[86] Letter from Joseph Wilson to Jack Corrado, dated June 15, 2009 (Ex. P).

[87] *See* http://www.lab126.com/contact.html (Ex. Q); http://www.lab126.com/about.html (Ex. R).

Business Division, which developed the Reader Digital Book product, and Sony's eBookstore operate out of San Diego, California.[88]

Moreover, Apple's MessagePad product (sometimes referred to as the "Newton") was introduced in 1993 and is prior art to the claimed invention.  Former Apple employees in Northern California who were involved with its development thus may be relevant to this case.  In March 1996, Apple's former Senior Vice President of Worldwide Research and Development demonstrated web browsing using a MessagePad connected to a GSM cellular telephone at a conference in San Francisco.[89]  This former executive apparently still resides in Northern California.[90]

Monec also has indicated that U.S. Patent No. 5,983,073 to Richard Ditzik may be relevant to this case.[91]  During prosecution, the Examiner cited the Ditzik patent as an anticipatory reference.[92]  Mr. Ditzik resides in Southern California.[93]

## **ARGUMENT**

This case has virtually no ties to the Eastern District of Virginia.  It was brought by a Swiss corporation against a corporation incorporated and headquartered in California.  The accused product was neither designed nor manufactured in Virginia, and nationwide sales and marketing efforts of the accused product are directed from the Northern District of California.  ***None of Apple's expected witnesses*** resides here, and ***none of the documents*** that Apple expects

---

[88] *See* http://news.sel.sony.com/en/press_room/consumer/computer_peripheral/e_book/ release/39964.html (Ex. S).

[89] Nicolas Mokhoff, *Mobile Industry Eyes Web*, ELEC. ENG'G TIMES, Mar. 25, 1996 (Ex. T).

[90] *See* http://people.forbes.com/profile/david-c-nagel/48809 (indicating board membership on three Northern California corporations) (Ex. U).

[91] Letter from Joseph Wilson to Jack Corrado, dated June 15, 2009 (Ex. P).

[92] Office Action, dated May 23, 2001 at 2 (Ex. I).

[93] U.S. Patent No. 5,983,073 (listing "San Diego, CA" as residence for Mr. Ditzik).

to the subject of discovery are located here.[94]  If this Court is a convenient forum for this case, then it is a convenient forum for every patent infringement action involving a product with nationwide distribution.

### A.    SECTION 1404 PERMITS THE COURT TO TRANSFER THIS CASE TO AVOID UNNECESSARY INCONVENIENCE TO WITNESSES AND THE PARTIES.

Section 1404(a) of Title 28, the federal transfer statute, authorizes this Court to transfer a case when – as here – a more logical forum exists.  Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.[95]

The statute vests this Court with broad discretion to transfer this action.[96]  Its purpose is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"[97]  Here, the interests of justice, and the convenience of the parties and the witnesses each weigh in favor of transferring this case to the Northern District of California.

### B.    THIS CASE COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA.

In ruling on a motion to transfer, the Court must first determine whether the plaintiff could have brought the claims in the Northern District of California.[98]  This prerequisite is

---

[94] The lone exception is the prosecution history for the asserted patent at the Patent Office, which Apple has already obtained and Monec presumably already possesses.

[95] 28 U.S.C. § 1404(a).

[96] *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

[97] *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

[98] *See Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003).

satisfied if the district would have jurisdiction over the subject matter of the action, if the venue is proper, and the defendant would be amendable to process.[99]

All of these criteria are clearly satisfied by the Northern District of California.  Apple is incorporated in California.  Cupertino, which is located in the Northern District of California, is the location of Apple's headquarters and the center of the design, development, sale, and marketing activity related to the accused iPhone.

**C.     THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA, THE "PREFERRED FORUM" FOR THIS ACTION.**

Once it is determined that suit could have been brought in another forum, the determination of whether transfer is appropriate is based upon an analysis of four factors: (1) witness convenience and access; (2) the convenience of the parties; (3) the plaintiff's choice of venue; and (4) the interest of justice.[100]  All of these factors except for Monec's choice of forum (which for reasons discussed below, is entitled to little or no weight) strongly suggest that the Eastern District of Virginia is an inconvenient forum for the resolution of this action.

**1.     The Convenience of and Access to Witnesses Weighs Heavily in Favor of Transfer to California.**

Nearly all of the witnesses necessary to the trial of this action are located in the Northern California, where Apple and the vast majority of the Apple employees knowledgeable about the accused iPhone product reside.  While Apple has employees in a handful of retail stores in the Virginia, it has thousands of employees in Northern California.  Apple is unaware of any

---

[99] *See id.*; 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.").

[100] See *JTH Tax.Inc v. Whitaker. et al*, No. 2:07-cv-170, 2007 WL 2126300, at *7 (E.D. Va. July 16, 2007); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592-93 (E.D. Va. 1992).

witnesses with pertinent knowledge of the iPhone or electronic book applications for the iPhone who reside in this district.

No known or anticipated Monec witness is either a resident of Virginia or within the subpoena power of this Court.  Rather, Monec's witnesses appear to be residents of Europe and Connecticut.[101]  Neither Monec's Complaint nor the parties' Initial Disclosures suggest the existence of any witnesses residing in Virginia who might be relevant to this litigation.[102]  Monec's correspondence, however, identifies California individuals or entities that might be relevant to this action, such as Lab126 (located just one mile from Apple's Cupertino headquarters).[103]

Monec's choice of the Eastern District of Virginia as the forum for this case will impose a substantial burden on the principal Apple witnesses in this case, who would have to travel across the country to attend trial in the Eastern District of Virginia.  This burden is eliminated or significantly reduced for all witnesses if this action is transferred to California.  Such inconvenience alone justifies transfer of this action.[104]

In short, Monec chose a forum in which ***none of the witnesses*** reside, and which has no connection to the case.  That choice is illogical and inconvenient.  This case should be transferred to the Northern District of California, where a substantial portion of the witnesses reside.[105]

---

[101] Monec's Initial Disclosures (Ex. N).

[102] *Id.*; Apple's Initial Disclosures (Ex. O).

[103] Letter from Joseph Wilson to Jack Corrado, dated June 15, 2009 (identifying Kindle, Sony Reader, and Ditzik patent as potentially relevant to the case) (Ex. P).

[104] *See Smeltzer v. Southern Resorts, Inc.*, No. 87-145, 1987 U.S. Dist. LEXIS 9999, at *6 (E.D. Va. Oct. 5, 1987).

[105] *See In re Genentech, Inc*., 2009 U.S. App. LEXIS 10882, at *14-15 (Fed. Cir. May 22, 2009) (ordering transfer of patent case despite inconvenience to plaintiff).

### 2.     The Convenience of the Parties Weighs Heavily in Favor of a Transfer.

In patent infringement actions, the preferred forum is generally "the center of the accused activity."[106]  "The trier of fact ought to be as close as possible to the milieu of the infringing device *and the hub of activity centered around its production.*"[107]  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."[108]

The preferred forum in this case is the Northern District of California, as the parties will have the greatest access to proof in that district.  Apple has approximately 7,800 employees at its Northern California headquarters in Cupertino, and nearly all of the employees who might be relevant to this litigation are in Cupertino.  Additionally, with the possible exception of the prosecution history for the asserted patent at the Patent Office (which Apple has already obtained and Monec should possess), no documents expected to be the subject of discovery or necessary for the adjudication of this case are located in Virginia.  All or nearly all of the documents are located either in California, where Apple resides, or in Switzerland, where Monec resides.

Moreover, a transfer would not significantly burden Monec.  As a foreign corporation from Switzerland, Monec has no home forum.  Its witnesses will have to travel a significant

---

[106] *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001); *see also Agilent Tech., Inc. v. Micromuse, Inc.,* 316 F. Supp. 2d 322, 326 (E.D. Va. 2004) (preferred forum for patent cases is where majority of witnesses and evidence is located).

[107] *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999); *see also LG Elecs., Inc. v. Asustek Computers,* 126 F. Supp. 2d 414, 423 (E.D. Va. 2000) (transferring case to N.D. Cal. where defendant assembled computers with allegedly infringing parts, from E.D. Va., where retail activity occurred).

[108] *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006); *see also Telepharmacy Solutions Inc. v. Pickpoint Corp.,* 238 F. Supp. 2d 741, 744 (E.D. Va. 2003) (finding the Northern District of California "to be the most logical and convenient forum" where "the majority of documentary and testimonial evidence is available and most easily accessible in the Northern District of California"

distance no matter where the trial is held.[109]  Any increased burden on Monec is far outweighed

by the significantly increased burden on Apple and its witnesses if the case is not transferred.[110]

### 3.   The Plaintiff's Choice of Forum Does Not Weigh Against a Transfer.

Although the plaintiff's choice of forum is a factor in the transfer analysis, the weight

accorded to the plaintiff's choice of forum "varies in proportion to the connection between the

forum and the cause of action."[111]  While Apple sells products nationwide, only a small portion

of its sales occur in this district; just 6 of its 210 retail stores (less than 3%) are located in

Virginia.[112]  Where, as here, a defendant sells the accused product nationwide, mere sales and

marketing activity within the forum alone do not provide a significant nexus to the infringing

activity.[113]  Because Monec has selected a forum where neither it nor Apple resides and where

only a small portion of the events giving rise to the cause of action accrued, Monec's choice of

forum "loses its place status in the court's consideration."[114]

---

[109] *See Genentech,* 2009 U.S. App. LEXIS 10882, at *12 ("The witnesses from Europe will be required to travel a significant distance no matter where they testify."); *Original Creatine Patent Co., Ltd. v. Met-RX USA, Inc.*, 387 F. Supp. 2d 564, 570 (E.D. Va. 2005) (transferring case to venue of defendant's headquarters where transfer was equally convenient or inconvenient for English plaintiff, but significantly more convenient for defendant).

[110] *See id.*; *accord Genentech*, 2009 U.S. App. LEXIS 10882, at *14-15 (ordering transfer of patent case despite inconvenience to plaintiff).

[111] *GTE Wireless*, 71 F. Supp. 2d at 519; *Original Creatine*, 387 F. Supp. at 568.

[112] Reicher Decl. ¶ 8 (Ex. M).

[113] *See Acterna*, 129 F. Supp. 2d at 938 (transferring patent infringement action even though defendant maintained a national sales office and other offices in Virginia); *see also Original Creatine*, 387 F. Supp. 2d at 570 (concluding that Virginia lacked significant nexus to accused activity where only 4% of accused product sales occurred in Commonwealth); *Agilent,* 316 F. Supp. 2d at 326-27 (transferring patent infringement case where only connection with forum was defendant's sales of allegedly infringing products in the forum).

[114] *Ion Beam Applications S.A. v. Titan Corp.*, 156 F. Supp. 2d 552, 563 (E.D. Va. 2000); *see also Verosol*, 806 F. Supp., at 592 ("[When a] plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue *is not* entitled to . . . substantial weight.") (emphasis added).

Additionally, the plaintiff's choice of forum is entitled to even less weight where that choice inconveniences the principal witnesses in the case.[115]  Monec chose to file this action across the country from Apple's headquarters and the location of potential witnesses, in a forum with no connection to its claims beyond the fact that some portion of nationwide sales is conducted within the district.  Having selected a distant forum to which it has no connection, Monec's forum choice is entitled to no deference.

### 4. The Interests of Justice Favor Transfer or Are Neutral.

The interests of justice would be served transferring this case to the Northern District of California because, as the forum where Apple and nearly all its employees reside, that forum has a substantial interest in the resolution of this case.[116]  By contrast, "[i]n a case brought by a foreign plaintiff against an out-of-state defendant, there is little local interest in having the matter decided in Virginia."[117]

Although the relative congestion of a court's docket can be a factor in assessing the interests of justice, docket conditions are not decisive where the case has no direct connection to the forum.[118]  Indeed, in a case involving similar circumstances, *Original Creatine Patent Co. v. Met-Rx USA, Inc.*, this Court stated that, "when docket considerations are the primary reason a party has initiated an action in this court, as may be the situation in the instant case, the interest of justice is not served."[119]

---

[115] *See Original Creatine*, 387 F. Supp. 2d at 570.

[116] *See  Cognitronics Imaging Sys., Inc. v. Recognition Res. Inc.,* 83 F. Supp. 2d. 689, 696 (E.D. Va. 2000) (noting court should consider "the interest in having local controversies decided at home").

[117] *Original Creatine*, 387 F. Supp. 2d at 572 (citing *Cognitronics* 83 F. Supp. 2d. at 696.

[118] *See GTE Wireless*, 71 F. Supp. 2d at 520 ("[d]ocket conditions, although relevant, are a minor consideration when all other reasonable and logical factors would result in a transfer of venue. If the rule were otherwise, every company with a national market and a patent infringement claim would be entitled to venue in this District. The result would be untenable and thus this can never be the rule.")

[119] *See* 387 F. Supp. 2d at 572 (citing *Telepharmacy*, 238 F. Supp. 2d at 743-44).

The plaintiff in the *Original Creatine* case was an English company.  It sued the defendant, a Nevada corporation with New York headquarters, in the Eastern District of Virginia.  The defendant manufactured sports nutrition supplements and sold them to independent retailers and distributors nationwide, including ones in Virginia.[120]

This Court transferred the case to the Eastern District of New York, concluding that the plaintiff's forum choice and the fast docket in the Eastern District of Virginia were insufficient bases for retaining the case where the only connection to the forum was general sales activity.[121] The Court noted that under the plaintiff's rationale, venue for a case involving a company engaged in nationwide sales would be appropriate in *any district* in the country.  Such a liberal reading of section 1404(a) would undermine the statute's emphasis on convenience of the parties and of potential witnesses.[122]

---

[120] *Id.*

[121] *Id.* at 568 ("Contrary to the plaintiff's argument, however, '[f]ederal courts are not solicitous of plaintiffs claiming substantial weight for their forum choice where the connection with the forum is limited to sales activity without more.'") (quoting *Acterna*, 129 F. Supp. 2d at 938); s*ee also In re TS Tech United States Corp.,* 551 F.3d 1315, 1321 (Fed. Cir. 2008) (ordering transfer of patent infringement action where there was "no relevant connection between the actions giving rise to th[e] case and the [chosen venue] except that [products] have been sold in the venue."); *Agilent,* 316 F. Supp. 2d at 326 (transferring patent infringement action when only alleged connection with forum was defendant's sales of allegedly infringing products there).

[122] *See Original Creatine,* 387 F. Supp. 2d at 568.

## CONCLUSION

The iPhone's 2 x 3 inch display lacks "dimensions such that one page of a book can be displayed at a normal size."  The claims of the '678 patent cannot be construed in a manner that would cover the iPhone's display, because the claims would be meaningless or indefinite.  Because Apple does not infringe or the claims are meaningless or indefinite, Apple asks that the Court enter judgment on the pleadings or summary judgment in its favor.  In the alternative, Apple asks that this action be transferred to the U.S. District Court for the Northern District of California for the convenience of the parties and witnesses.

Dated: June 19, 2009

Respectfully submitted,

By: _____/s/_____

John P. Corrado (VSB #20247)
*jcorrado@mofo.com*
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., N.W., Suite 6000
Washington, DC 20006-1888
Telephone:   (202) 887-1500
Facsimile:    (202) 887-0763

*Of Counsel:*

Michael A. Jacobs
*mjacobs@mofo.com*
Richard S.J. Hung
*rhung@mofo.com*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    (415) 268-7000
Facsimile:     (415) 268-7522

Michael E. Anderson (VSB #45145)
*manderson@mofo.com*
MORRISON & FOERSTER LLP
1650 Tysons Boulevard, Suite 300
McLean, Virginia  22102
Telephone:   (703) 760-7700
Facsimile:    (703) 760-7777

*Attorneys for Defendant Apple Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of June, 2009, I will electronically file the foregoing

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE INC.'S

MOTION FOR JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT, OR IN

THE ALTERNATIVE, TO TRANSFER UNDER 28 U.S.C. § 1404 with the Clerk of Court

using the CM/ECF system, which will then send a notification of such filing (NEF) to the

following:

>Joseph D. Wilson, III, Esq.
>KELLEY DRYE & WARREN LLP
>Washington Harbour, Suite 400
>3050 K Street, NW
>Washington, DC 20007
>
>Steven J. Moore, Esq.
>Delphine W. Knight Brown, Esq.
>KELLEY DRYE & WARREN LLP
>400 Atlantic Street
>Stamford, Connecticut 06901
>
>*Counsel for Monec Holding AG*

I also certify that I will send these documents via email and UPS Overnight Mail to the

following:

>Joseph Wilson, III, Esq.
>KELLEY DRYE & WARREN LLP
>Washington Harbour, Suite 400
>3050 K Street, NW
>Washington, DC 20007
>
>Steven J. Moore, Esq.
>Delphine W. Knight Brown, Esq.
>KELLEY DRYE & WARREN LLP
>400 Atlantic Street
>Stamford, Connecticut 06901
>
>*Counsel for Monec Holding AG*

_____/s/_____
John P. Corrado (VSB# 20247)
*jcorrado@mofo.com*
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:     (202) 887-1500
Facsimile:     (202) 887-0763

*Counsel for Defendant Apple Inc.*

va-275227