**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| MONEC HOLDING AG, | § | |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | Civil Action No.   1:09-CV-312 |
| | § | (LMB/JFA) |
| v. | § | |
| | § | |
| APPLE INC., | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | |
| | § | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT APPLE INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, TO TRANSFER UNDER 28 U.S.C. § 1404**

# TABLE OF CONTENTS

**Page**

I.     AS A MATTER OF LAW, THE IPHONE'S DISPLAY DOES NOT MEET THE
       "DISPLAY . . . AT A NORMAL SIZE" LIMITATION OF THE '678 PATENT. ......2

       A.     Monec's Proposed Construction Is Inconsistent with Well-Settled Claim
              Construction Principles and Renders the Claim Language Indefinite ..............3

              1.     Monec's Construction Is Inconsistent with the Claim Language
                     and Intrinsic Evidence and Relies Excessively on Extrinsic
                     Evidence .............................................................................................4

              2.     Monec's Construction Would Render the Claim Language
                     Indefinite ............................................................................................5

       B.     Monec Cannot Avoid the Intrinsic Evidence .....................................................6

              1.     "Large" Means Large .........................................................................6

              2.     "Conventional" Books Are the Relevant Media in the Patent ..............9

              3.     Claim 4 Does Not Support Monec's Construction ............................10

       C.     Judgment Should Be Entered for Apple ...........................................................11

II.    ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE
       NORTHERN DISTRICT OF CALIFORNIA .............................................................12

       A.     Monec's Choice of a Forum with which It Has No Connection
              Merits No Weight .............................................................................................12

       B.     The Center of the Allegedly Infringing Activity Is the Northern District
              of California .....................................................................................................14

       C.     A Transfer to California Would Be More Convenient for the
              Parties And Witnesses .....................................................................................15

              1.     A Transfer Would Not Shift the Burden of Inconvenience to
                     Monec ...............................................................................................15

              2.     Monec's Offer to Conduct Depositions on the West Coast Does
                     Not Eliminate the Inconvenience to Apple .........................................17

              3.     Transfer Will Minimize the Burden on Third Party Witnesses ...........17

       D.     Docket Considerations Do Not Weigh Against a Transfer ..............................18

       E.     Monec's Assertion That California Courts Lack Jurisdiction Over
              Apple's Counterclaims Is Incorrect .................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acterna, L.L.C. v. Adtech, Inc.*,
    129 F. Supp. 2d 936 (E.D. Va. 2001) ...............................................................13, 14

*Agilent Tech., Inc. v. Micromuse, Inc.*,
    316 F. Supp. 2d 322 (E.D. Va. 2004) .....................................................................13

*Akers v. Norfolk & W. Ry. Co.*,
    378 F.2d 78 (4th Cir. 1967) .....................................................................................17

*Apple Computer, Inc. v. Dragon Sys., Inc. and Metrobook Computer Corp.*,
    Civ. Act. No. 1:97-cv-01764.....................................................................................15

*Autogenomics, Inc. v. Oxford Gene Technology Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009).................................................................................19

*Avocent Huntsville Corp. v. Aten International Co.*,
    552 F.3d 1324 (Fed. Cir. 2008).................................................................................19

*Constant v. Advanced Micro-Devices, Inc.*,
    848 F.2d 1560 (Fed. Cir. 1988)...................................................................................9

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)...................................................................................5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    344 F.3d 1359 (Fed. Cir. 2003)...................................................................................8

*Finmeccanica S.p.A. v. Gen'l Motors Corp.*,
    2007 U.S. Dist. LEXIS 85268 (E.D. Va. Nov. 19, 2007)...........................13, 15, 16

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
    71 F. Supp. 2d 517 (E.D. Va. 1999) .................................................12, 13, 14, 16

*In re Eastern Dist. Repetitive Stress Injury Litig.*,
    850 F. Supp. 188 (E.D.N.Y. 1994) ..........................................................................17

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)...........................................................................14, 19

*Ion Beam Applications S.A. v. Titan Corp.*,
    156 F. Supp. 2d 552 (E.D. Va. 2000) ......................................................................14

*Jumpit, AS v. Why ASAP L.L.C.,* No. 04-1079 (PLF), 2005 U.S. Dist. LEXIS 4247
  (D.D.C. Mar. 16, 2005) .................................................................................................19, 20

*Netcraft Corp. v. eBay, Inc.,*
  549 F.3d 1394 (Fed. Cir. 2008)...................................................................................10

*Original Creatine Patent Co. v. Met-Rx USA, Inc.,*
  387 F. Supp. 2d 564 (E.D. Va. 2005) ................................................12, 13, 16, 18

*Penntube Plastics Co. v. Fluorotex, Inc.,*
  336 F. Supp. 698 (D.S.C. 1971)...................................................................................17

*PETsMART, Inc. v. Lanrus, Inc.,*
  No. 91-1721-R(M), 1992 WL 275599 (S.D. Cal. Mar. 30, 1992)....................19, 20

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005)...........................................................................4-6, 10

*Realsource, Inc. v. Best Buy Co.,*
  282 Fed. Appx. 821 (Fed. Cir. 2008).........................................................................10

*RWM Kinetics Enters. v. Kinetic Concepts, Inc.,*
  No. 95 C 5376, 1996 WL 238753 (N.D. Ill. May 7, 1996) ....................................19

*Sjolund v. Musland,*
  847 F.2d 1573 (Fed. Cir. 1988).....................................................................................5

*Springs Window Fashions LP v. Novo Indus., L.P.,*
  323 F.3d 989 (Fed. Cir. 2003)........................................................................................7

*Star Brite Distrib., Inc. v. Gavin,*
  746 F. Supp. 633 (N.D. Miss. 1990)....................................................................19, 20

*Torreblanca de Aguilar v. Boeing Co.,*
  806 F. Supp. 139 (E.D. Tex. 1992).............................................................................17

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure:

Rule 26(a)(1).......................................................................................................................18

Rule 56(f)..............................................................................................................................2

28 U.S.C.§ 1404.........................................................................................................19, 20

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| MONEC HOLDING AG, | § | |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | Civil Action No.   1:09-CV-312 |
| | § | (LMB/JFA) |
| v. | § | |
| | § | |
| APPLE INC., | § | |
| | § | |
| Defendant/Counterclaim Plaintiff. | § | |
| | § | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT APPLE INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, TO TRANSFER UNDER 28 U.S.C. § 1404**

Monec's opposition brief confirms that Apple's iPhone does not infringe Monec's '678

patent as a matter of law.  Monec points to no factual issue that could defeat Apple's motion, nor

does it demand further discovery.  Rather, Monec acknowledges, as it must, that this motion

turns on the proper construction of the '678 patent's "display . . . at a normal size" limitation —

an issue of law.  Monec also acknowledges that it must offer some construction of this limitation

that avoids indefiniteness.

Monec's proposed construction of this limitation, however, violates well-settled claim

construction principles.  Rather than focusing on the intrinsic evidence, as claim construction law

requires, Monec supplies an expert who offers a construction that turns on "readability" and is

based on extrinsic considerations such as "thumbnails" and "pixel depth."  These concepts

appear nowhere in the specification or file history.  Monec's proposed "readability" construction

also fails to delineate the boundary between an infringing and non-infringing display and would

render the claim indefinite.  Monec further fails to demonstrate why Apple's proposed

construction, that the display of the "display . . . at a normal size" limitation must be large

enough to display conventional books at their normal size, is improper.  Monec also fails to show

how the iPhone could infringe under a construction supported by the intrinsic evidence.

Accordingly, Apple requests that judgment of non-infringement be entered in its favor.  If

judgment is not entered for Apple, then this case should be transferred to the Northern District of

California.  Monec's opposition confirms that the factors in the transfer analysis do not support

the continued maintenance of this case in this Court.

## ARGUMENT

## I.   AS A MATTER OF LAW, THE iPHONE'S DISPLAY DOES NOT MEET THE "DISPLAY . . . AT A NORMAL SIZE" LIMITATION OF THE '678 PATENT.

There are no factual issues barring Apple's motion for judgment.  Monec does not

challenge the relevant facts – including the size of the iPhone's display – asserted in Apple's

motion, and Monec does not seek additional factual discovery to oppose the motion under

Rule 56(f) of the Federal Rules of Civil Procedure.  Nor does Monec make a showing that the

iPhone infringes under the doctrine of equivalents.  Accordingly, the only issue is a legal one:

Can the "display . . . at normal size"[1] limitation be construed to cover a display as small as the

iPhone's 2 x 3 inches display without introducing fatal indefiniteness into the claim?

To support its position that the iPhone is infringing, Monec contrives an elastic

construction of the "display . . . at a normal size" limitation that turns on whether a page of a

book is "readable" on the display and whether it is "recognized as a page" by some unknown,

hypothetical viewer.  Monec argues that the "book" in this claim limitation can include a book

of any size.[2]

---

[1] The full text of the limitation is:  "said display has dimensions such that one page of a book can be displayed a normal size."  For brevity, Apple refers to this limitation as the "display . . . at a normal size" limitation in this brief.

[2] Opp. Br. at 10-11.

But there is no support for Monec's proposed construction in the claim language or other intrinsic record of the '678 patent. This is amply evidenced by Monec's failure to cite supportive intrinsic evidence in its brief. Monec's heavy reliance on extrinsic evidence, presented through the declaration of its expert, Dr. Stubblebine, is improper. Moreover, because "readability" is subjective, Monec's proposed construction would render the claim indefinite. Monec's opposition reinforces the correctness of Apple's proposed construction, and confirms that, as a matter of law, the iPhone does not infringe.

### A. MONEC'S PROPOSED CONSTRUCTION IS INCONSISTENT WITH WELL-SETTLED CLAIM CONSTRUCTION PRINCIPLES AND RENDERS THE CLAIM LANGUAGE INDEFINITE.

Monec's brief proposes the following definition for the "said display has dimensions such that one page of a book can be displayed at a normal size" limitation at issue:

> [T]he representation of one page of a book could be displayed on the display such that it would be recognized as a page by the viewer and would be readable.[3]

In addition to this proposed formal construction, Monec argues that the limitation is not restricted to any "published" page size.[4] Monec's purported showing of infringement points to miniature or "sexagesimo-quarto" books next to the iPhone. Hence, a complete statement of Monec's claim construction is something like:

> The representation of one page of a book, including a miniature book, could be displayed on the display such that it would be recognized as a page by the viewer and would be readable.

This interpretation fails every well-settled test for claim construction and should be rejected.

---

[3] Opp. Br. at 11.

[4] *Id*. at 6.

### 1.    Monec's Construction Is Inconsistent with the Claim Language and Intrinsic Evidence and Relies Excessively on Extrinsic Evidence.

Monec's proposed construction fails the first test of a proper construction:  it is not consistent with the plain language of the claim.[5]  Monec's proposed construction, in effect, replaces "at a normal size" with "would be readable."  But readability is not coextensive with "a normal size;" material may be readable at a size smaller than a normal text size.  Monec's contention that the article "a" before "normal size" implies a wide range of potential normal sizes proves too much:  "a normal size" cannot mean "a normal size including a non-normal but readable size" without introducing a fatal contradiction into the construction.

Monec's proposed construction also fails the second test of a proposed construction:  it is not grounded in the intrinsic evidence.[6]  Monec points to no other intrinsic evidence, such as the patent's specification, supporting "readability" as a proper elaboration of "normal."  Indeed, Monec's brief cites no intrinsic evidence whatsoever to support this interpretation.  While Dr. Stubblebine's declaration points to column 2, lines 28-31 of the specification,[7] this passage has nothing to do with display dimensions or text size.  Instead, it involves *backlighting*, explaining that the display should have sufficient backlighting to be read without outside light.

Relying on Dr. Stubblebine, Monec also argues that size limitations should be based on extrinsic evidence about the technological limits of displays, including available resolution in terms of pixels per inch and the readability of "thumbnails."[8]  But none of these concepts is discussed in the intrinsic evidence – the most authoritative of claim construction sources.  As a result, the claim cannot be stretched to mean "readability" based on these concepts.  Finally,

---

[5] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*).

[6] *See id.* at 1313-17.

[7] Stubblebine Decl. ¶ 29.

[8] *Id.* at ¶¶ 20-21.

under well-settled claim construction law, ignoring the intrinsic record and instead using

extrinsic evidence like expert opinion to determine claim scope is disfavored.[9]  That Monec's

sole support for its proposed construction is extrinsic evidence confirms its inappropriateness.

### 2.      Monec's Construction Would Render the Claim Language Indefinite.

Monec's proposed construction also fails to provide adequate notice of the scope of the

limitation, and hence would render the limitation indefinite.  Monec does not rebut Apple's cases

establishing that, particularly given the claim language's focus on the *dimensions* of the display,

the claim must convey to one of skill in the art the limits on the size of the required display.[10]

But Monec's proposed construction conveys no such limits.

In fact, Monec's proposed construction fails claim definiteness requirements.  It offers no

boundaries for determining what and to whom the content is "readable."  Text may be readable

to one person, but unreadable to another.  For example, an older person's standard for what is

"readable" may differ from a younger person's.  Likewise, something "readable" to a person

wearing reading glasses may be unreadable to the same person without them.  "Readability" thus

is highly subjective and indeterminate.  In *Datamize, LLC, v. Plumtree Software, Inc.*,[11] the

Federal Circuit held that the use of phrases like "aesthetically pleasing," which depend for their

understanding on some "undefined standard," renders a claim indefinite.  Because Monec's

---

[9] *See Phillips*, 415 F.3d at 1318 ("discount[ing] any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'").

[10] *See Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988) (explaining that patentees must provide notice and a clear "measure" of the invention); *accord Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1347 (Fed. Cir. 2005) ("[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude.").

[11] 417 F.3d at 1352-53.

proposed claim construction relies on imprecise and "undefined" standards about what constitutes "readability," it would render the claim fatally indefinite.

The indefiniteness issues with Monec's construction are aggravated by Monec's suggestion that the claim language embraces any hypothetical miniature book page.[12]  As Apple explained in its opening brief, a construction that limits the size of the display based only on the ability of the plaintiff to find some miniature book of comparable size provides no guidance in determining how small the display can be while still meeting the limitation.

### B.     MONEC CANNOT AVOID THE INTRINSIC EVIDENCE.

In its opening brief, Apple cited ample intrinsic evidence in support of its position that the "display . . . at a normal size" limitation refers to the display of one page of a typical or conventional book at normal size.  Accordingly, the limitation cannot be construed to cover the iPhone, which has a display that is too small for this purpose.

Monec devotes much of its opposition brief to trying to controvert Apple's proposed construction and the intrinsic evidence on which Apple relied.  Monec's efforts are unavailing. Because Apple's construction is correct, judgment in Apple's favor is proper.

#### 1.     "Large" Means Large.

The specification describes the display of the invention as "large" or "relatively large" in three different places.[13]  While Monec alleges that Apple improperly imports limitations from specific embodiments into the claim by referring to these descriptions, Monec ignores that the specification is "the single best guide to the meaning of a disputed term."  Apple is not importing limitations from the specification into the claim, but rather construing it.[14]  As Monec concedes

---

[12] Opp. Br. at 6; Stubblebine Decl. ¶¶ 19-20.

[13] '678 patent, Abstract, col. 1, lines 42-46; col. 5, lines 55-59.

[14] *See Phillips*, 415 F.3d at 1314-15.

by offering a construction of the "display . . . at a normal size" limitation, the claim language is not self-defining.

The specification passages that Apple cites appear in the Abstract and in the Summary of the Invention.  The Abstract, for example, states:

> The electronic device *according to the invention* provides the considerable advantage that it . . . can be used very universally and in this case has a relatively large display (emphasis added).

By using the words "large" and "relatively large" to refer to the "invention," the applicant made clear that these descriptions referred to the invention itself, not just the preferred embodiment.  Similarly, when the applicant submitted pictures of its own Voyager product with its 10.4" (diagonal) screen during prosecution, he offered them to describe his "invention" — not an embodiment thereof.

Unable to reconcile these descriptions of the claimed "display" with its allegation that it encompasses the iPhone's small display, Monec argues that the language in the specification was, in effect, a *mistake*.  For example, Monec suggests that it should not be bound by the limiting characterizations in the Abstract because claim construction law has changed.[15]  But Monec provides no authority for such a loose approach to claim construction.[16]  Monec also offers no principled way for knowing when to excuse a patentee — who is charged with putting the world on notice of the scope of his invention — from his own patent drafting errors.

Monec also claims that the specification, which employs similar language, contains a

---

[15] Opp. Br. at 8.

[16] *See Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent. . . .  If the applicant mistakenly disclaimed coverage of the claimed invention, then the applicant should have amended the file to reflect the error, as the applicant is the party in the best position to do so.").

"grammatical error."[17]   But Monec does not identify the alleged error.   Regardless, there is no

claim construction doctrine — and Monec points to none — that avoids the specification's

usefulness as a guide to the proper interpretation of claim language because its wording is

"ungrammatical."   While Dr. Stubblebine opines that the specification's references to a

"relatively large" display refer only to the relative proportion of the display to the housing, the

intrinsic evidence provides no basis for this reading.   Monec easily could have characterized the

display as "large *relative to the size of the housing*" in the specification, but didn't.

Finally, although Monec tries to critique Apple's citations to the prosecution history,[18] it

cannot reconcile its position that the claims cover small displays with its representation to the

Examiner that the Monec Voyager's 10.4" diagonal display "depicts the technical features . . . of

the present invention."[19]   Monec's contentions that the Gaston and Ditzik references, on which

the Examiner relied to reject the claims during prosecution, are irrelevant also are misplaced.[20]

The Examiner's rejections of the claims as anticipated by Ditzik (with its 6 x 8 inch display) and

by Gaston (with its 6.5 x 6.5 inch display) demonstrates the Examiner's understanding that

"display . . . at a normal size" means something much larger than 2 x 3 inches.   The references

that the Examiner identified as anticipatory references all disclosed "large" displays – consistent

---

[17] Opp. Br. at 8.

[18] For example, Monec argues (at 10) that the applicant's deletion of the word "approximately" from the phrase "approximately one page of a book can be displayed at normal size" did not "fix" or "limit" the claim.   Monec ignores that the "display . . . at a normal size" limitation is essentially a limitation about dimensions.   Accordingly, dropping the word "approximately" from the limitation in fact narrowed it.   "Approximately X size" is a broader claim than "X size," so deleting the word "approximately" could only have narrowed (not broadened) the claim's reach.   Because this narrowing was undertaken for reasons of patentability, under *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1364-65 (Fed. Cir. 2003) (en banc), infringement by equivalents is unavailable to Monec.

[19] '678 patent, Abstract, col. 1, lines 42-46; col. 5, lines 55-59; Amendment, dated February 26, 2001 at 5 (emphasis added) (Ex. G to Apple Op. Mem.).

[20] Opp. Br. at 9.

with Apple's position that the claimed display must be large, and inconsistent with Monec's interpretation that the claimed display can be as small as the iPhone's.

2.       **"Conventional" Books Are the Relevant Media in the Patent.**

Monec argues that the specification's references to "conventional" materials, such as books, should be disregarded because they allegedly refer only to the prior art.[21]   Monec also deduces that, because the conventional media discussed in the specification included newspapers, it would be absurd to require the claimed device to be large enough to read a full page of, *e.g.*, the *New York Times*.

Monec ignores that the applicant elected to limit the display size to the "normal size" of "one page of a ***book***" in all claims of the '678 patent.  Accordingly, the specification's references to "newspapers" do not affect the construction of the "display . . . at a normal size" limitation, as they relate to an unclaimed embodiment.[22]   When discussing "books," the only adjective that the specification uses to describe them is "conventional."   The specification provides no indication that any other kind of book was contemplated.

Monec's contention that the "display . . . at a normal size" limitation is satisfied if the device can display a "sexagesimo-quarto" sized book also is without merit.[23]   Nothing in the specification suggests that the term "book" should be defined by reference to a miniature or "sexagesimo-quarto" sized book.   To the contrary, the specification indicates that the device of the invention "can be used very universally" and that the display should be "large" or "relatively

---

[21] Opp. Br. at 5-6.

[22] *See, e.g., Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988) (refusing to define claims according to unclaimed embodiments, where nothing in claim language suggested this).

[23] Opp. Br. at 6-7.

'large," thereby demonstrating the opposite.[24]  A display would be neither "large" nor "universally" applicable if it could be used with only the smallest sized books.

### 3.      Claim 4 Does Not Support Monec's Construction.

Monec argues that dependent claim 4 and the doctrine of claim differentiation demonstrate that claim 1's "display" is not limited to a particular large-sized display.  Claim 4's dimensions are irrelevant to the construction of claim 1, however, as it relates only to a specific range of *housing* sizes.  The limitation of claim 1 that is at issue in this motion is the *display* size.

Claim 4 also says nothing about whether claim 1 encompasses smaller displays.  This is a basic principle of claim drafting and interpretation:

> While claim differentiation may indicate that the scope of an independent claim is broader than that of a dependent claim . . . , it does not speak to what exactly is encompassed by the independent claim.[25]

For this reason as well, there is no basis for Monec's contention that claim 1 must include smaller housing sizes (as opposed to larger sizes) than those in claim 4.

Monec's contentions concerning the effect of claim 4 also fail, as they find no support in the plain language of the claims or the specification.  Monec deduces that, if the housing-to-display ratio of its Voyager product is applied to claim 4's minimum housing dimensions of 12 x 18 cm (4.7 x 7.1 inches), one arrives at a display area "close to" the iPhone's display.

Monec's reverse engineering analysis is improper, however, as it relies on information outside of the intrinsic evidence – specifically, the housing-to-display ratio of the Voyager

---

[24] '678 patent, Abstract, col. 1, lines 39-46; col. 5, lines 55-59.

[25] *Realsource, Inc. v. Best Buy Co.*, 282 Fed. Appx. 821, 827 (Fed. Cir. 2008) (unpublished) (citing *Philips*, 415 F.3d at 1315).  *Cf. Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1399-1400 (Fed. Cir. 2008) (rejecting claim differentiation argument, in light of support in intrinsic record for alternative construction).

*product*, which is not in the file wrapper.  One skilled in the art could not carry out Monec's

calculation based on the information in the specification or prosecution history itself.

If Monec's analysis were confined to the specification, and in particular, to the

dimensions of Figure 10, one arrives at a different conclusion.  The appropriate display-to-

housing ratio shown in Figure 10 is 69%.[26]  Applying this ratio to claim 4's minimum

dimensions of 12 x 18 cm results in a display size of 10.0 x 14.9 cm[27] – or 3.9 x 5.9 inches.  This

is approximately *twice* the linear size of the iPhone's 2 x 3 inch display, with a total display area

nearly four times as large (23 square inches versus 6 square inches).[28]  As Exhibit A depicts, this

also is roughly the size of a conventional paperback book.[29]

### C.   JUDGMENT SHOULD BE ENTERED FOR APPLE.

In responding to Apple's motion, Monec's burden was to show that, properly construed,

the "display . . . at a normal size" limitation reads on the Apple iPhone.  Because the iPhone is

much smaller than conventional books, Monec has been unable to proffer a plausible

construction that meets this requirement.  Apple's proposed construction aligns with a natural

reading of the claim language and other intrinsic evidence and confirms what one would

---

[26] This is comparing Figure 10's housing size of 7.7 x 11.7 cm (or 90.1 sq. cm) to its display size of 6.9 x 9.0 cm (or 62.1 sq. cm).

[27] 12 x 18 cm has an area of 216 sq. cm.  69% of this is 148.9 sq. cm, which roughly corresponds to a display of 10.0 x 14.9 cm.

[28] While Monec suggests that the phrases "display size" and display surface size" are different and that Apple's reliance on the specification overlooks the word "surface," Opp. Br. at 8, the common meaning of "display" and "display surface" are coextensive.  One cannot understand the concept of "display size" in the specification and the claims except in reference to its surface area.  Depth or thickness is irrelevant for determining display area.

[29] The Voyager's display is 10.4 diagonal inches and occupies a surface area more than six times larger than that of the iPhone's display.  *See* Apple's Counterclaims at ¶¶ 32, 47.  Further, the Voyager's housing size is near the upper limit of the housing size range described in the specification.  *Compare* Stubblebine Decl. ¶ 33 *with* '678 patent, col. 5, lines 13-17.

intuitively expect — that the iPhone does not satisfy the limitation.  Apple thus does not infringe as a matter of law, and judgment of non-infringement should be entered in its favor.

## II.     ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA.

Apple's motion alternatively requested that, if that the Court disagrees with Apple's motion for judgment, the Court transfer this case to the Northern District of California for trial. In opposition, Monec raises five primary arguments:  (1) a transfer would deprive Monec of its chosen forum; (2) the center of the accused activity is not the Northern District of California; (3) a transfer would inconvenience Monec; (4) the interests of justice weigh against transferring this case to a court with an allegedly slower docket; and (5) transfer is inappropriate because California courts would not have jurisdiction over Apple's counterclaims.  Each of these arguments lacks merit.

### A.     MONEC'S CHOICE OF A FORUM WITH WHICH IT HAS NO CONNECTION MERITS NO WEIGHT.

The weight accorded to the plaintiff's choice of forum "varies in proportion to the connection between the forum and the cause of action."[30]  There is no nexus between Apple's alleged infringing activity and this District.  Nearly all of Apple's documents and potential party and third party witnesses are located in the Northern District of California.  Monec is based in Switzerland, and all but one of the potential witnesses it identified resides in Europe.  Neither party identified any pertinent documents or witnesses located within this district.

Monec argues, however, that its choice of forum should be entitled to substantial weight because the Eastern District of Virginia and the neighboring District of Columbia are the only jurisdictions in the U.S. with which Monec has had contact.  The only "contacts" Monec can

---

[30] *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999); *Original Creatine Patent Co. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 568 (E.D. Va. 2005).

point to in this District consists are its own prior suit against Hewlett-Packard and the fact that

the patent was filed at the Patent and Trademark Office, however.  These are not the sorts of

substantial contracts with this venue that control the transfer issue.

Monec cites no support for its assertion that its now dismissed earlier lawsuit against

Hewlett-Packard is at all relevant to transfer under Section 1404.  To the contrary, courts in the

Eastern District of Virginia have consistently found that a plaintiff's choice of forum was entitled

to little or no weight absent some other form of contact.[31]  Similarly, prosecution activities at the

Patent Office in Virginia are irrelevant.[32]

The only nexus Monec can point to in Virginia – the sale of allegedly infringing products

here – is true of every other jurisdiction in the country.[33]  Moreover, Monec's sales in Virginia

account for only a small portion of sales nationwide.[34]  "Federal courts are not solicitous of

plaintiffs claiming substantial weight for their forum choice where the connection with the forum

is limited to sales activity without more."[35]  Where, as here, the plaintiff has selected a forum

where neither the plaintiff nor the defendant resides and where none of the events, giving rise to

---

[31] *See, e.g., GTE Wireless*, 71 F. Supp. 2d at 519; *Original Creatine*, 387 F. Supp. 2d at 568.

[32] *See, e.g., Finmeccanica S.p.A. v. Gen'l Motors Corp.*, No. 1:07-cv-794 (JCC), 2007 U.S. Dist. LEXIS 85268, at *10-11 (E.D. Va. Nov. 19, 2007) (Patent Office application does not create substantial connection to E.D. Va.).

[33] Opp. Br. at 20.  While Monec argues that venue is appropriate where sales of the accused product occur, this argument misses the point of Apple's motion to transfer.  The issue is not whether venue in this district is *proper*, but whether it is *convenient*.

[34] *See* Reicher Decl. ¶ 8 (Ex. M to Apple Op. Mem.).

[35] *See Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938-39 (E.D. Va. 2001) (transferring infringement action, even though defendant maintained national sales office and other offices in Virginia); *see also Agilent Tech., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 326-27 (E.D. Va. 2004) (transferring infringement action where only connection with forum was defendant's allegedly infringing sales).

the cause of action other than product sales, occurred, "that plaintiff's choice loses its place status in the court's consideration."[36]

### B.   THE CENTER OF THE ALLEGEDLY INFRINGING ACTIVITY IS THE NORTHERN DISTRICT OF CALIFORNIA.

It is well established that the preferred forum in patent infringement cases is the center of the accused activity, because discovery typically focuses on the accused products.[37]  Unable to demonstrate any connection between this litigation and the Eastern District of Virginia, Monec argues that Asia, where the iPhone is assembled, is the true center of the accused activity.[38]  But the focus of Monec's infringement claim is the *design* and *operation* of the iPhone, not the conditions of its *assembly*.[39]  Moreover, Monec does not dispute that all of the design and development work for the iPhone occurred at Apple's headquarters in Cupertino, California.[40]

Monec does not dispute that the '678 patent is an *apparatus* patent, not a manufacturing or process patent.[41]  During discovery, Monec has requested documentation describing the features and operation of Apple's iPhone device, such as technical specifications.  These documents are located in *California*.[42]  Further, Monec does not dispute that all sales and marketing activity for the iPhone is directed from Cupertino.[43]  Nor does Monec dispute that the

---

[36] *Ion Beam Applications S.A. v. Titan Corp.*, 156 F. Supp. 2d 552, 563 (E.D. Va. 2000).

[37] *See In re Genentech, Inc.*, 566 F.3d 1338, 1345-46 (Fed. Cir. 2009); *Acterna*, 129 F. Supp. 2d at 939; *GTE Wireless,* 71 F. Supp. 2d at 519.

[38] Opp. Br. at 23.

[39] *See Genentech,* 566 F.3d at 1345-46 (considering development and marketing activities); *Acterna*, 129 F. Supp. 2d at 939 (considering design, production, and marketing activities); *GTE Wireless,* 71 F. Supp. 2d at 519 (considering research, development, and design activities).

[40] Reicher Decl. ¶ 6.

[41] Opp. Br. at 23.

[42] Reicher Decl. ¶ 6.

[43] *Id*. at ¶¶ 6-7.

potential witnesses that Apple identified as having relevant knowledge of the iPhone all are located in California.[44]   Accordingly, California, not Asia, is the center of the accused activities.

### C.   A TRANSFER TO CALIFORNIA WOULD BE MORE CONVENIENT FOR THE PARTIES AND WITNESSES.

#### 1.   A Transfer Would Not Shift the Burden of Inconvenience to Monec.

Monec argues that a transfer to the Northern District of California would be extremely inconvenient for Monec's Swiss witnesses, who would need to travel an additional distance. Monec contends that the Eastern District of Virginia is a more convenient forum for both parties because it is "practically equidistant" from both.[45]

This Court rejected these same arguments in *Finmeccanica S.p.A. v. General Motors Corp.*[46]   The plaintiff in *Finmeccanica,* an Italian corporation, filed an infringement action against General Motors alleging that it was the sole owner of certain patent rights relating to hybrid vehicles.  The Court granted General Motor's motion to transfer the case to the Central District of California, where the bulk of its development activities and documentation relating to the accused technology were located.[47]

The Court found that the plaintiff's choice of forum was entitled to no significant weight

---

[44] These witnesses include Steve Zadesky, Director of iPod Product Design; Richard Howarth, Director of Industrial Design; Shawn Gettemy, Manager of iPod & iPhone Displays; Cindy Lawrence, Senior Manager of Worldwide Developer Relations; Mary Beth James, Manager of Worldwide Developer Relations; and Christopher Stringer, Senior Director of Industrial Design.  *See* Reicher Decl. ¶ 6.

[45] Opp. Br. at 21.  Monec also argues that this forum is convenient for Apple because Apple initiated a lawsuit, *Apple Computer, Inc. v. Dragon Sys., Inc. and Metrobook Computer Corp.*, Civ. Act. No. 1:97-cv-01764, here.  This lawsuit was filed 12 years ago, however, and had nothing to do with the accused iPhone or asserted patent.  Moreover, one of the defendants in that case, Metrobook Computer Corp., was located in Chantilly, Virginia.

[46] *Finmeccanica*, 2007 U.S. Dist. LEXIS 85268, *16-17.

[47] *Id*. at *16-17, 21.

because neither the plaintiff nor the causes of action had any connection to the forum.[48]  It noted

that, like here, neither party had identified any witnesses in the Eastern District of Virginia.[49]

More importantly, this Court rejected the plaintiffs' assertion that travel to Virginia was far more

convenient for its Italian employee witnesses than travel to California:

> While transferring this case to the Central District of California would
> be more convenient for Defendants' party witnesses, who would then
> not have to fly cross-country, transfer has a minimal impact on
> Plaintiffs' party witnesses:  it simply requires that they spend a few
> more hours on a plane than they would have to if the case remained in
> the Eastern District of Virginia.  Because transfer is only marginally
> less convenient for Plaintiffs' witnesses, it does not constitute a
> prohibited shifting of the "balance of inconvenience."  Thus, on
> balance, the Court finds that witness convenience weighs in favor of
> transfer.[50]

California is significantly more convenient for the party and non-party witnesses

identified by Apple, nearly all of whom are located in the Northern District of California.  Like

the Italian witnesses in *Finmeccanica,* the additional travel time to California (at most, a few

hours[51]) would be only a minor inconvenience for Monec's Swiss witnesses.[52]

---

[48] *Id*. at *12.

[49] *Id*. at *10-11 (rejecting plaintiff's contention that filing patent applications with U.S. Patent and Trademark Office created significant nexus with Eastern District of Virginia).

[50] *Id*. at *19-20.

[51] Monec contends its witnesses will lose "days" in travel time if this case is transferred, purportedly because the "average flight time" from Geneva to San Jose is seven hours more than that from Geneva to Washington D.C.  (Opp. Br. at 24-25.)  Monec's references to "average" flight times do not prove that Monec's witnesses will be inconvenienced.  Monec's complaints also ignore the possibility of reduced travel time by flying to nearby airports.  For example, San Francisco is less than 50 miles from San Jose — closer than Geneva is to Monec's headquarters in Bern.  Flight times from Geneva to San Francisco are as short as 13 and half hours, compared to flight times of approximately 9 hours from Geneva to Washington D.C. (Ex. B).

[52] *See Finmeccanica*, 2007 U.S. Dist. LEXIS 85268, at *19-20; s*ee also Original Creatine*, 387 F. Supp. 2d at 570 (transferring action where English witnesses would have to travel regardless of jurisdiction); *GTE Wireless*, 71 F. Supp. 2d at 520 (transferring case where plaintiff did not identify potential Virginia witnesses); *Ion Beam*, 156 F. Supp. 2d at 561-63 (transferring case to

### 2. Monec's Offer to Conduct Depositions on the West Coast Does Not Eliminate the Inconvenience to Apple.

Monec's willingness to depose Apple's witnesses and third parties in California does not change this analysis. Both Apple and Monec will endeavor to minimize the inconvenience to all witnesses. Still, absent transfer, most key witnesses would still be required to travel to Virginia to attend trial.[53] "[E]vidence through deposition [is] a mode of proof universally acknowledged to be inferior to the personal appearance of witnesses in court."[54] It "precludes the trier of fact from its most important role; evaluating the credibility of the witnesses."[55] Even a videotaped deposition is "no substitute for live testimony," because it deprives the trial judge and jury of the ability to evaluate the witnesses in person, particularly in patent cases.[56]

### 3. Transfer Will Minimize the Burden on Third Party Witnesses.

Monec states that the burden on Apple's witnesses is less important than the burden on third party witnesses. But Apple has identified at least three witnesses, Richard Ditzik, David Nagel, and Robert Borchers, who may have information pertinent to its invalidity case and are located in California.[57] Mr. Ditzik is the named inventor of the Ditzik patent that the Examiner used to reject all claims during prosecution, and Mr. Nagel is familiar with the Newton/MessagePad's status as prior art. Mr. Borchers, the former Senior Director of Product

---

S.D. Cal. over Belgian plaintiff's contention that East Coast was more convenient for its witnesses).

[53] Unless Monec's Swiss witnesses agree to appear at trial in Virginia or California, their testimony will necessarily be through deposition designation.

[54] *Akers v. Norfolk & W. Ry. Co.*, 378 F.2d 78, 79 (4th Cir. 1967).

[55] *Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 144 (E.D. Tex. 1992).

[56] *In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994); *Penntube Plastics Co. v. Fluorotex, Inc.*, 336 F. Supp. 698, 706 (D.S.C. 1971) ("The importance of having live testimony of such witnesses has been recognized in this Circuit as a compelling reason for transferring, particularly in patent cases.)

[57] *See* Apple Op. Mem. at 21 and Exs. L, O, T, and U to Apple Op. Mem.

Marketing for the iPhone, is based in the Northern District of California.[58]  As these witnesses are beyond this Court's subpoena power, they would have to travel across the country to attend trial or would need to appear by deposition.

By contrast, Monec identifies only one "third party" witness,[59] Theodor Heutschi, the inventor of the '678 patent, who allegedly will be inconvenienced by transfer of this action. Mr. Heutschi, a former Monec employee, does not appear to be independent from Monec, however.  In its Initial Disclosures, Monec refused to allow Apple to contact Mr. Heutschi, a former employee, except through Monec's own counsel.[60]

### D.  DOCKET CONSIDERATIONS DO NOT WEIGH AGAINST A TRANSFER.

While Monec argues this Court's faster docket weighs against transfer to the Northern District of California, this Court has consistently rejected that argument where, as here, that is the plaintiff's primary reason for selecting the venue.  Keeping a case in this District based primarily on docket considerations does not serve the interests of justice.[61]

### E.  MONEC'S ASSERTION THAT CALIFORNIA COURTS LACK JURISDICTION OVER APPLE'S COUNTERCLAIMS IS INCORRECT.

Finally, Monec argues this case cannot be transferred to the Northern District of California because that district would not have had original jurisdiction over Apple's declaratory

---

[58] Supp. Reichler Decl., dated July 14, 2009, at ¶¶ 2-4 (Ex. C).

[59] Monec's briefing and the declaration of Paul Santner claim that a witness with knowledge of the '678 patent's prosecution is located in Washington, D.C. but fail to identify him or her. Monec's Initial Disclosures under Rule 26(a)(1) do not shed any light on this matter and, indeed, contradict this claim.  The disclosures identify only Willi Luchs, Esq., of *Stamford, Connecticut* as having knowledge regarding the prosecution of the '678 patent.  (Ex. N to Apple Op. Mem.).

[60] *See* Monec's Initial Disclosures ("Monec does not consent to Defendant contacting any of Monec's employees, former employers, or attorneys directly; instead any such contact should be through counsel at Kelley Drye & Warren LLP.") (Ex. N to Apple Op. Mem.).  Monec also has not alleged that Mr. Heutschi would be unwilling to travel to California for trial.

[61] *Original Creatine*, 387 F. Supp. 2d at 572.

-18-

judgment counterclaims, had those counterclaims been filed first.  In support, Monec cites the

Federal Circuit's rulings in *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*[62] and *Avocent*

*Huntsville Corp. v. Aten International Co.*[63]  Monec's argument is wrong on several fronts.

First, the existence of counterclaims and the transferee forum's ability to exercise

jurisdiction over the plaintiff are *irrelevant* to a motion to transfer under section 1404.[64]  As the

Federal Circuit explained in *In re Genentech*:

> There is no requirement under § 1404(a) that a transferee court
> have jurisdiction over the plaintiff or that there be sufficient
> minimum contacts with the plaintiff; there is only a requirement
> that the transferee court have jurisdiction over the defendants in the
> transferred complaint.[65]

Second, courts have repeatedly rejected Monec's precise argument — that a defendant's

counterclaims are relevant to the transfer analysis.  In *RWM Kinetics Enters. v. Kinetic Concepts,*

*Inc.*,[66] for example, the plaintiff argued that transfer was inappropriate because the defendant's

counterclaims could not have been brought independently in the transferee district.  The court

rejected the plaintiff's arguments, stating that the existence of counterclaims was "irrelevant."[67]

---

[62] 566 F.3d 1012 (Fed. Cir. 2009)

[63] 552 F.3d 1324 (Fed. Cir. 2008).

[64] *Genentech,* 566 F.3d at 1346 (holding that court abused its discretion in denying transfer);
*RWM Kinetics Enters. v. Kinetic Concepts, Inc.,* No. 95 C 5376, 1996 WL 238753, at *2-3 (N.D.
Ill. May 7, 1996); *PETsMART, Inc. v. Lanrus, Inc.,* No. 91-1721-R(M), 1992 WL 275599 at *2-3
(S.D. Cal. Mar. 30, 1992) (rejecting argument that action transferred from another district should
be dismissed because there was no venue as to counterclaims); *Star Brite Distrib., Inc. v. Gavin,*
746 F. Supp. 633, 640 (N.D. Miss. 1990) (refusing to dismiss or transfer action based on
argument that counterclaims raised after transfer to district lacked venue).

[65] *Genentech*, 566 F.3d at 1346.

[66] 1996 WL 238753 at *2-3.

[67] *Id*. at *2.

The Court noted the proper inquiry under Section 1404(a) was whether the original action could have been brought in the transferee forum "when the suit was instituted:"[68]

> Thus, whether Defendants could have brought their action against [the Plaintiff] in San Antonio is irrelevant to the Court's determination of where the action "might have been brought." Under that standard, the counterclaims notwithstanding, venue is proper in the San Antonio Division. [69]

Here, it is undisputed that Monec could have brought suit in Apple's home venue, the Northern District of California.

Similarly, in *Jumpit, AS v. Why ASAP L.L.C.,* the court rejected the plaintiff's argument that a transfer was inappropriate because the transferee court lacked independent jurisdiction over the defendant's counterclaims.[70]  The plaintiff brought an infringement action in the District of Columbia, and the defendant raised a declaratory judgment claim.  The defendant then moved to transfer the entire case to the District New Jersey under Section 1404(a), which the court granted.  The court explained that "[t]he assertion of a counterclaim by the defendant . . . does not bear on the Court's consideration of whether plaintiff might have brought suit in the proposed transferee district in the first place."[71]

## CONCLUSION

The iPhone's 2 x 3 inch display does not display "one page of a book at a normal size," and California is the center of the allegedly infringing activity.  Apple urges the Court to enter judgment in its favor or, alternatively, transfer this case to the Northern District of California.

---

[68] *Id.* at *2.

[69] *Id.*; *PETsMART,* 1992 WL 275599 at *2-3 (noting that venue only applies at start of action, and not to counterclaims); *Star Brite*, 746 F. Supp. at 640.

[70] No. 04-1079 (PLF), 2005 U.S. Dist. LEXIS 4247, at *4-5 (D.D.C. Mar. 16, 2005).

[71] *Id.* at *5.

Dated: July 15, 2009

Respectfully submitted,

By:  _____/s/_____

     John P. Corrado (VSB #20247)
     *jcorrado@mofo.com*
     MORRISON & FOERSTER LLP
     2000 Pennsylvania Ave., N.W., Suite 6000
     Washington, DC 20006-1888
     Telephone:   (202) 887-1500
     Facsimile:    (202) 887-0763

*Of Counsel:*

Michael A. Jacobs
*mjacobs@mofo.com*
Richard S.J. Hung
*rhung@mofo.com*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:      (415) 268-7000
Facsimile:       (415) 268-7522

     Michael E. Anderson (VSB #45145)
     *manderson@mofo.com*
     MORRISON & FOERSTER LLP
     1650 Tysons Boulevard, Suite 300
     McLean, Virginia  22102
     Telephone:   (703) 760-7700
     Facsimile:    (703) 760-7777

     *Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, 2009, I will electronically file the foregoing

REPLY MEMORANDUM IN SUPPORT OF APPLE INC.'S MOTION FOR JUDGMENT ON

THE PLEADINGS OR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, TO

TRANSFER UNDER 28 U.S.C. § 1404 with the Clerk of Court using the CM/ECF system,

which will then send a notification of such filing (NEF) to the following:

> Joseph D. Wilson, III, Esq.
> KELLEY DRYE & WARREN LLP
> Washington Harbour, Suite 400
> 3050 K Street, NW
> Washington, DC 20007
>
> Steven J. Moore, Esq.
> Delphine W. Knight Brown, Esq.
> KELLEY DRYE & WARREN LLP
> 400 Atlantic Street
> Stamford, Connecticut 06901
>
> *Counsel for Monec Holding AG*

I also certify that I will send these documents via email and UPS Overnight Mail to the

following:

> Joseph Wilson, III, Esq.
> KELLEY DRYE & WARREN LLP
> Washington Harbour, Suite 400
> 3050 K Street, NW
> Washington, DC 20007
>
> Steven J. Moore, Esq.
> Delphine W. Knight Brown, Esq.
> KELLEY DRYE & WARREN LLP
> 400 Atlantic Street
> Stamford, Connecticut 06901
>
> *Counsel for Monec Holding AG*

>           /s/
>                
> John P. Corrado (VSB# 20247)
> *jcorrado@mofo.com*
> MORRISON & FOERSTER LLP
> 2000 Pennsylvania Avenue, N.W.
> Washington, D.C.  20006
> Telephone:     (202) 887-1500
> Facsimile:     (202) 887-0763
>
> *Counsel for Defendant Apple Inc.*